[No. 3574.    Decided April 27, 1901.]

E. J. DYER, *Appellant*, v. MIDDLE KITTITAS IRRIGATION DISTRICT OF KITTITAS COUNTY, STATE OF WASHINGTON, *Respondent*.

IRRIGATION DISTRICTS — CONTRACT FOR CONSTRUCTION OF DITCH — INTERPRETATION — SUSPENSION OF WORK — RECOVERY OF INSTALLMENTS DUE.

Under a contract for the construction of an irrigation ditch, thirty miles in length, for which the contractor was to be paid at an agreed rate for excavation and materials, payment to be made monthly to the extent of ninety per cent. of the value of the work done, as estimated by the engineer in charge, "provided that if said contractor completes said work and estimates on the same are returned sooner than the funds from the sale of bonds reaches the treasurer of said district, then whatever estimate would have otherwise been payable . . . shall not be payable until the funds arising from the sale of bonds are in the hands of said treasurer to meet the same," the contractor is not required to complete the work before being entitled to maintain an action for any installment due him, but where, after having earned a monthly installment, he waits a reasonable time for the defendant to sell its bonds and pay him the compensation due, and defendant neglects and refuses to raise moneys from the sale of its bonds, he is warranted in suspending work and bringing an action for the recovery of the *pro tanto* amount due under his contract.

SAME — REFUSAL TO APPROVE ENGINEER'S ESTIMATE — EFFECT.

A contractor is not debarred from maintaining an action to recover compensation due him under the estimates returned by the engineer in charge of the work, by the fact that such estimates had never been approved by the board of directors of defendant corporation, as the contract required, when it appears that the refusal of the board to act upon the estimates was purely arbitrary.

SAME — DIRECTORS — POWER TO AUTHORIZE SUSPENSION OF WORK.

Under Bal. Code, § 4176, which provides that the board of directors of corporations organized for irrigation purposes shall have power to make and execute all necessary contracts, and perform all such acts as shall be necessary to fully carry out the

purposes of their charter, such board have power to make an
agreement with a contractor that a contract lawfully entered
into by them for the construction of an irrigating ditch may
be annulled and work thereunder suspended.

SAME — CONTRACTS — CONSIDERATION.
    An agreement for the abandonment of a contract needs no
new or independent consideration to support it.

Appeal from Superior Court, Kittitas County.—Hon.
JOHN B. DAVIDSON, Judge.   Reversed.

*Graves & Englehart, C. S. Voorhees* and *Reese H. Voor-
hees,* for appellant.

*Pruyn & Slemmons,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—The appellant, who was plaintiff be-
low, instituted this action to recover the price of certain
labor and material alleged to have been furnished the
respondent in the construction of an irrigating ditch or
canal by one Peter Costello under a written contract en-
tered into between Costello and the respondent.   The trial
court sustained a general demurrer to the complaint, and,
upon the appellant's refusal to plead further, entered a
judgment for costs in favor of the respondent.   The ulti-
mate question before us is, therefore, does the complaint
state a cause of action?

The complaint alleges the due organization of the re-
spondent as an irrigation district under and by virtue of
the act of the legislature of the state of Washington ap-
proved March 20, 1890 (Session Laws 1889-90, p. 671),
and the acts supplemental thereto; that after its organiza-
tion the district voted for and sold bonds for the purpose
of raising money to construct irrigating canals and works,
and thereupon entered into a contract with one Peter Cos-
tello to construct for it an irrigating canal or ditch of

about thirty miles in length, according to certain plans and specifications theretofore adopted by the district. The contract is set out in the complaint, and contains, among others not material to be considered here, the following provisions:

"This contract, made and entered into this 23d day of July, A. D. 1894, by and between the Middle Kittitas Irrigation District, of Kittitas county, Washington, a public corporation organized and existing under and by virtue of the laws of the state of Washington, party of the first part, and Peter Costello, party of the second part,

"Witnesseth:   That, whereas the said Middle Kittitas Irrigation District, by virtue of the authority vested in the board of directors of said district by laws of the state of Washington, hereby agrees to let unto the said Peter Costello, contractor, the entire work of constructing and completing a certain canal or ditch for said Middle Kittitas Irrigation District, to be known as the Middle Kittitas Irrigation Canal or Ditch, according to the specifications hereto attached and made a part of this contract, and the plans, profiles, and drawings on file in the office of the secretary of said district:

"Now, therefore, in consideration of the payments and covenants hereinafter mentioned, to be made and performed by the said party of the first part, the said Peter Costello hereby covenants and agrees to furnish all the material, labor, and appliances, and do all the work above mentioned in a substantial and workmanlike manner in strict accordance with the aforesaid specifications, plans, profiles, and drawings, and in strict obedience to any and all directions which may from time to time be given by the engineer in charge of said work, and to the satisfaction and acceptance of said engineer, and to the approval of the board of directors of said irrigation district. . . .

"The work embraced in this contract shall be begun within ten days after notice so to do shall be given by the engineer to the said contractor, and shall be carried on regularly and uninterruptedly thereafter with such force of employees as may be necessary to secure its full

and entire completion on or before the first day of May, A. D. 1895. . . . .

"In consideration of the construction and completion by the said party of the second part of all the work embraced in this contract in strict accordance with the aforesaid specifications, plans, profiles, and drawings, and the covenants and agreements herein contained, to the satisfaction and acceptance of the engineer in charge of the work, and the approval of the board of directors of the Middle Kittitas Irrigation District, the Middle Kittitas Irrigation District, party of the first part, hereby agrees to pay to Peter Costello, the party of the second part, the following prices, to-wit:

Solid Rock at $1.00 per cubic yard.

Loose rock at $0.32 per cubic yard.

Earth excavation at 10 4-10 cents per cubic yard.

Timber, tongue and grooved, at $17.40 per M., B. M.

Rough lumber at $16.40 per M., B. M.

Tunnel excavation, earth, at $1.54 per cubic yard.

Tunnel excavation, loose rock, at $3.74 per cubic yard.

Tunnel excavation, solid rock, at $6.00 per cubic yard.

Timber lining for tunnel at $18.40 per M., B. M.

Clearing 75 acres, more or less, at $22.00 per acre.

Grubbing 20 acres, more or less, at $80.00 per acre.

Cast iron at $0.06 per pound.

Steel at $0.06 per pound.

Concrete at $9.00 per yard.

"The payments for the above work to be made in monthly installments, not to exceed ninety (90) per cent. of each estimate returned by the engineer; provided, that if said contractor completes said work and estimates on the same are returned sooner than the funds from the sale of bonds reaches the treasurer of said district, then whatever estimate would have otherwise been payable upon the return thereof by the engineer shall not be payable until the funds arising from the sale of bonds are in the hands of said treasurer to meet the same.

"And the said Peter Costello hereby covenants and agrees to construct and complete the entire work men-

tioned in this contract on or before the first day of May, A. D. 1895, and it is hereby expressly understood and agreed by and between the parties hereto that the specifications hereto attached are a part of this contract."

It is next alleged that, after entering into the contract, Costello prosecuted his work upon the canal until about the 4th day of November, 1894; that such work was performed in accordance with the plans and specifications, and in strict obedience to all directions which were given him by the engineer in charge of the work for the respondent; that the engineer in charge furnished the board of directors of the district with two estimates, the one of date September 18, 1894, which was for the amount of $19,-164.16, and the other of date November 20, 1894, for the amount of $42,849.02; that the board of directors approved the first estimate, but failed, neglected, and refused to examine, approve, or take any action on the second; "that the total amount that was due to said Costello, under said contract, and the reasonable value of the work done by him as aforesaid, was the sum of $62,013.18; that said district paid to said Costello, upon the amount so due the sum of $18,300, leaving a balance due under said contract of $43,713.18;" that the respondent had no other available resources from which to pay for the work called for by the contract, except by the sale of its bonds, and that on or about the 1st of November, 1894, while Costello was in the full and active performance of his contract, it became known to him that the respondent had not collected any money from the sale of the bonds since the payment of the estimate of September 9, 1894, and that it had no money wherewith to pay for the work then done, and for which payment was then due; that the purchasers of the bonds were unable to consummate the sale, and were in default several installments of the purchase price; that the respondent had taken no steps to compel payment of

the amounts due on the bonds, or to rescind the sale, or to make other dispositions of the bonds for raising money; that he could get no assurances from the respondent that money wherewith to pay for the work done upon the estimate then due would be raised within a reasonable time, or at all; that it was apparent that no money would be collected on account of the sale of the bonds, and that the conduct of the respondent made it to appear to be very uncertain whether it would be able to carry out its part of the contract, and that because of these things he deemed it necessary to suspend work until the respondent should raise the money, or take such action as would probably raise the money within a reasonable time.   Then follow the following allegations:

"That the said Costello was unable to procure at that time a meeting of the board of directors of defendant, but did consult with the secretary of said board, and, with said secretary, drove some miles to the residence of the president of said board, and consulted with the said president as to what was most advisable for him (the said Costello) to do.   That the said president stated to the said Costello that defendant had no money wherewith to make payment to the said Costello, and no prospect of getting any money for such payment, and that the said Costello should suspend work under said contract until such time as defendant could arrange to raise money wherewith to carry on said contract.

"That thereupon said Costello did stop work under said contract, under the conditions and for the purpose aforesaid, and that thereafter, to-wit, on or about the 6th day of November, 1894, a meeting of the board of directors of defendant was held at which the said Costello and president were present, and stated to said board the action taken by said president, and that said Costello had stopped work, as aforesaid, until defendant could arrange for raising funds within a reasonable time for making payment for the work then done under said contract, whereupon

he would continue said work; and the said board stated to said Costello that defendant had no money with which to pay for the work then done under said contract, and no prospect of getting any money for such purpose, and consented to, acquiesced in, and approved of the stopping of work by the said Costello, and the action of the said president in relation thereto.

"That for many months after stopping said work, the said Costello made many and persistent efforts to induce the defendant to take some action looking to the raising of money by the sale of said bonds for the purpose of carrying on said contract, and earnestly endeavored to secure from defendant some statement as to what defendant would do, or try to do, looking to the payment for the work already done and the completion of said contract, but defendant at all times would not and did not give the said Costello any definite statement, intimation, or information as to what defendant would do in and about the premises, or as to whether it would do anything. That said Costello had great difficulty in getting said board to meet for the purpose of considering the matter of defendant's indebtedness to him, or the raising of funds by the sale of said bonds, and that said board showed a strong disposition and intention not to discuss said matters with said Costello, and to do nothing in regard thereto, and to do nothing toward performing defendant's part of said contract, or any portion thereof."

It is then alleged that the respondent delivered only $20,000 face value, of the bonds sold, leaving with it unsold bonds of the face value of $180,000; that it never at any time took any steps for the enforcement of the contract of sale, but rescinded the contract on January 12, 1895; that it wholly failed and neglected and refuses to offer the remainder for sale, or take any steps looking thereto, and that it has done nothing since the payment of the estimate of September 18, 1894, looking to the raising of funds for the carrying on of the contract, or any part thereof; that no part of the balance due for

the work performed has been paid, and on March 23, 1897, for a valuable consideration, Costello sold and assigned his claim to the appellant.  The demand is for judgment for the sum of $43,713.18, and legal interest from November 20, 1894.

The record does not disclose the reasons which induced the learned trial judge to hold that no cause of action was stated in the complaint, but we gather from the arguments of counsel it was not because of the omission of an essential allegation which could have been supplied by amendment, but was because the facts pleaded conclusively show that no cause of action had accrued, or could possibly accrue, to Costello by the terms of the contract. In support of this contention it is first urged that the contract is an entirety, and consequently must be performed as a whole before an action will lie for the contract price, or any installment thereof.  Whether the contract is entire or separable may not be necessary here to determine, but, if it were so necessary, we think it could well be doubted whether it is entire in the sense contended for.  There is no fixed price for the whole work, nor are the installments agreed to be paid by the terms of contract arbitrarily fixed, without regard to the amount and value of the work done at the time they are made payable.  The party performing the work is to be paid at so much per cubic yard for stone removed, at so much per thousand feet for lumber furnished, at so much per acre for grubbing and clearing, and at so much per pound for iron and steel furnished; and the amount of the monthly installments are measured by these considerations, and are as capable of definite ascertainment at the end of the month as they would be at the time of the completion of the work.  Contracts of this character are not usually regarded as wholly entire or wholly separable, but belong

to that intermediate class where partial performance entitles to partial recovery, subject to offset for damages suffered because of the failure to complete the contract as a whole, even when the party undertaking to perform the work ceases of his own volition and without lawful excuse before its completion. But, if we were to regard this contract as entire, we think the facts alleged in the complaint show a sufficient excuse for its non-performance on the part of Costello. Subject to the qualification contained in the proviso with regard to the time funds reached its treasurer, it is clear that the respondent was by the terms of the contract as much obligated to make monthly payments, up to ninety per cent. of the work performed during the preceding month, as Costello was obligated to perform the work. These promises were mutual and dependent, in the sense that nothing could be claimed until a month's work had been performed; but after that time they became independent, and the failure to make the payment on the part of the respondent operated to release Costello from further obligation to go on with the work; and rendered it liable to him for the work performed, at the contract price. This principle seems to be generally affirmed by the authorities. In *Phillips, etc., Construction Co. v. Seymour,* 91 U. S. 646, the plaintiffs entered into a contract with the defendant by which they undertook to construct a part of the Wisconsin Central railroad which the defendant had contracted to build. The contract provided, among other things, that payments should be made by the defendant, as the work progressed, on estimates made monthly by the engineer of the railroad company on the 15th of each month, for all work done on the previous month, except fifteen per cent., retained by defendant as security for performance on the part of the plaintiffs until the work was completed. The

plaintiffs brought their action of covenant on the contract, alleging that they had commenced the work in July, shortly after the contracts were signed, and had prosecuted it vigorously until some time in December; that the defendant had failed to pay the estimate for work done in October and November, and, seeing no prospect of payment, the plaintiffs were compelled to abandon the work. They asserted a claim for all the work done as estimated, and for various items of damage suffered by them in consequence of the failure of the defendant to make the payments as agreed. They recovered in the court below, and this judgment was affirmed by the supreme court; the court holding that the plaintiffs were not required, after the defendant had defaulted on a payment due, to proceed with the work, at the hazard of further loss, and that they were entitled to recover the contract price of the work done, together with the fifteen per cent. on the estimate retained by the defendant as security for the performance of the contract. In *Dobbins v. Higgins,* 78 Ill. 440, speaking of the rights of the parties to a similar contract, the court said:

"That there was a breach of contract on the part of appellants, cannot be contested. By their contract, they were bound to pay on estimates at the end of each month. . . . Having failed to make payment for the work performed in October on the contract, appellees had the unquestioned right to abandon the contract and to sue for and recover compensation for damages. The correct measure of damages was adopted by the instructions given for appellees. They informed the jury that they had a right to recover for the work done and not paid for, *pro tanto,* at the contract price. This has been repeatedly held by this court to be the true rule in this character of cases."

In *Lord v. Belknap,* 1 Cush. 279, it was said:

"Whether mutual stipulations are dependent and conditional, or independent, is sometimes a difficult question. But, where time is given for performance on one side, and payments are to be made on the other within such time it is certain that the making of payments cannot depend upon a full and complete performance."

And in that case it was held that, under a contract to construct and complete a portion of a railway in consideration of certain monthly payments, and the balance of the contract price when the work should be completed, the party undertaking the performance of the work could recover the monthly payments earned, although he had failed to complete the entire work. To the same effect is the case of *Perkins v. Locke* (Tex. Civ. App.), 27 S. W. 783. The syllabus of that case, which correctly states the point decided, is as follows:

"A contract for the building of a railroad provided for payment in first mortgage bonds, to be issued *pro rata* on the certificate of the chief engineer when each five miles was ready for rolling stock. The contract was to be forfeited 'if said road, or any portion thereof, shall not be fully completed.' *Held,* that the contract was not an entirety, but that the bonds should have been issued on the engineer's certificate when each five miles were ready for rolling stock, and the right to them under the contract was not affected by the failure to complete the road."

See also *Crawford v. McKinney,* 165 Pa. St., 609 (30 Atl. 1047); *Grand Rapids & Bay City R. R. Co. v. Van Deusen,* 29 Mich. 443; 2 Sutherland, Damages, (2d ed.) § 708; *Lake Shore & M. S. Ry. Co. v. Richards,* 152 Ill. 59 (38 N. E. 773, 30 L. R. A. 33.)

But it is said,—and this is, perhaps, the principal reliance of the respondent,—that it is especially provided in the contract "that if said contractor completes said work

and estimates on the same are returned, sooner than funds from the sale of bonds reaches the treasurer of the district, then whatever estimates would have otherwise been payable upon the return thereof by the engineer shall not be payable until funds arising from the sale of the bonds are in the hands of said treasurer to meet the same," and that the complaint shows upon its face that no funds have been received from the sale of the bonds since the first sale of $20,000, which sum has been paid the contractor.   It is argued that the language of the contract in this respect is plain and unambiguous, contains no doubtful phrases, or scientific or commercial terms which might be the subject of explanation, and hence there is no room for construction, and the contractor could neither abandon the contract, nor recover for any defaulted install-ment of the contract price, until he shows that the money from the sale of bonds actually reached the treasurer, and the respondent had then refused to make the agreed pay-ments.   To this there are two sufficient answers: The first is that the contract, when construed in the light of sur-rounding circumstances will not bear the construction the respondent would put upon it.  It is a familiar rule that contracts will be given that construction which will best effectuate the intention of the parties, and that this inten-tion must be collected, not from detached portions of the contract but from the contract as a whole.  The court will, also, in determining the intention of the parties, look to the circumstances under which the contract was made, the subject-matter and the objects and purposes for which it was made.   Applying these principles here, it cannot be supposed that the parties to the contract intended, by the proviso in question, to agree that the payment for this vast work should depend upon the contingency of the dis-trict being able to dispose of its bonds at the price limited

by the statute under which it was organized.   It is shown by the complaint that the canal was to be some thirty miles in length.   It was said in the argument that its estimated cost exceeded $150,000.   Certainly no prudent man would agree to a contract calling for the expenditure of this vast sum of money on the condition that it should or should not be returned to him as the contingency mentioned might or might not happen.   The natural and obvious conclusion to be drawn from a reading of the contract is that the parties intended by the contract that the party doing the work should be paid for the work done in monthly installments, and, in any event, that, if the money to meet these payments was not on hand at the time the estimates were returned, a reasonable delay should not be deemed a breach of the contract on the part of the district; but more than this, it is evident, no one intended to claim.   It was not intended or expected by either party that the contractor should complete the work, whether these installments were paid or not; nor was it intended that he should be paid only in the event the bonds were sold. Whether the contractor was warranted in ceasing work at the time he did cease, in the lights he then had, is not a material question now.   Subsequent events have shown that he was.   Had the district acquired funds to meet the payments due within a reasonable time after the work ceased, it might be a question whether he had not forfeited his contract, but the district cannot be heard to urge the matter at this time.   It is not only shown that it did not acquire funds within a reasonable time, but it is shown that none had been received up to the time of the commencement of this action.

The second answer is the parties mutually agreed that the work should be suspended.   To this it is objected that the board of directors of the district was without power

to consent to a cessation of work, and, if it had power and did so consent, there was no consideration for the agreement, and hence it is not obligatory. In support of the first proposition it is argued that an irrigation district is a quasi-municipal corporation, that the powers of its board of directors are limited to such as the statute clearly defines, and that no power is given the board to agree that a contract once lawfully entered into may be rescinded or annulled. The section of the statute defining the powers of the board of directors contains the following:

"The board shall have power, and it shall be their duty to manage and conduct the business and affairs of the district, make and execute all necessary contracts, employ and appoint such agents, officers and employees as may be required, and prescribe their duties, establish equitable by-laws, rules and regulations for the distribution and use of water among the owners of said lands, and generally to perform all such acts as shall be necessary to fully carry out the purposes of this act." Bal. Code, § 4176 (Session Laws 1890, p. 677, § 11).

It is true that in this country all corporations, whether public or private, derive their powers from legislative grant, and can do no act for which authority is not expressly given, or may be reasonably inferred from the powers granted. But this rule must not be given a too narrow application, else, corporations may be denied in some cases the power of self-preservation, as well as many of the means necessary to effect the objects for which they were incorporated. Suppose, in this case, the district had made an improvident contract—had, for example, entered into an agreement to construct a canal which should be found after the work started, because of difficulties unforeseen, insufficient to carry water; could it be successfully contended that no power existed in the district to change or modify the mode of construction or abandon it altogether?

It would seem that this power would exist, from the mere grant of power to construct a canal. But the statute here is broad. Power is given the board of directors to "make and execute all necessary contracts  .  .  .  . and generally to perform all such acts as shall be necessary to fully carry out the purposes of its charter." This power is amply sufficient to authorize the board of directors to annul a contract lawfully entered into, and of the necessity and sufficiency of the cause for such an act it is the sole judge.

As to the second objection, it is sufficient to say the agreement required no new or independent consideration to support it. *Tingley v. Fairhaven Land Co.,* 9 Wash. 34, 39 (36 Pac. 1098); *Long v. Pierce County,* 22 Wash. 330, 348 (61 Pac. 142); *Hathaway v. Lynn,* 75 Wis. 186 (43 N. W. 956, 6 L. R. A. 551); *Ruege v. Gates,* 71 Wis. 634 (38 N. W. 181); *Izard v. Kimmel,* 26 Neb. 51 (41 N. W. 1068).

It is further urged that the complaint shows that the estimates returned by the engineer, which gave rise to the claim sued upon, were never approved by the board of directors of the district, and that this is necessary, under the terms of the contract, before any obligation arises to pay for the work. On this point enough is alleged in the complaint to show that the refusal of the board to act was purely arbitrary. No reason for the refusal existed, if the allegations of the complaint be true, and they must be taken as true for the purposes of this demurrer. It is needless to add that the district cannot escape liability in this way.

The other reasons suggested for sustaining the judgment of the trial court require no separate consideration. On the whole, we think the complaint states a cause of action. Many of its essential allegations are, of course, travers-

able, and it may be that there are reasons why the appellant should not be permitted to recover; but such, if any there are, must be taken by answer.

The judgment appealed from is reversed, and the cause remanded with permission to the respondent to answer over.

Reavis, C. J., and Dunbar and Anders, JJ., concur.