[No. 20954. Department One. March 19, 1928.]

THE CITY OF SEATTLE, *Appellant,* v. R. L. SPARGER *et al.,*
*Respondents.*[1]

[1] CONTRACTS (159)—MUNICIPAL CORPORATIONS (159-1)—PUBLIC IM-
PROVEMENTS—PARTIAL PERFORMANCE OF CONTRACT—RIGHTS OF
CONTRACTOR. The abandonment by a contractor of work on a
public improvement, because of the failure of the city to pay
moneys due under a monthly estimate, is no defense to an
action by the contractor to recover such installment.

Appeal from a judgment of the superior court for
King county, Paul, J., entered April 29, 1927, upon
findings in favor of the defendants, in an action on
contract. Affirmed.

*Thomas J. L. Kennedy, J. Ambler Newton,* and
*Veida S. Morrow,* for appellant.

*Riddell & Brackett* and *Edwin C. Ewing,* for re-
spondents Sparger.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respond-
ent Aetna Casualty & Surety Co.

TOLMAN, J.—In April, 1923, the respondent R. L.
Sparger entered into a contract with the city of Seattle
for the construction of a tunnel under the Duwamish
Waterway. He gave a statutory bond in the sum of
$40,000 for the faithful performance of the contract,
with the respondent Aetna Casualty and Surety Com-
pany as surety thereon. The work was to be paid for,
under the contract, on the unit price plan. The con-
tract is in the form commonly used by the city of
Seattle for such work, is too long to be here set out in
full, but carries the usual provisions for the commence-
ment of the work and its regular and uninterrupted
prosecution under the direction of the city engineer;

¹Reported in 265 Pac. 173.

that the contractor must satisfy himself as to the material to be penetrated and the difficulties likely to be encountered; and provides that estimates shall be issued monthly covering all work done in the preceding month, and that the city shall pay such estimates, less the retained percentages provided by the contract, on or about the 25th day of the month following the performance of the work for which the estimate has been issued. There is also a provision to the effect that the city engineer, if in his opinion the work is unnecessarily delayed and will not be finished within the prescribed time, shall notify the contractor to that effect in writing, and if within five days thereafter the contractor has not taken proper measures to insure the satisfactory completion of the work, the board of public works may, on notice, require the contractor to discontinue, and may itself employ a force and complete the work, and the expenditures thereby caused shall be paid out of moneys due or which might become due under the contract; and if greater than that, that the contractor shall be liable for the excess.

The work started about May 15, 1923, and proceeded more or less satisfactorily until December of that year, when difficulties were encountered. Work was suspended, the contractor sealed up the tunnel to prevent its caving in and filling up, and the city claims that he abandoned the work on December 17, 1923. There was admittedly due the contractor for work done in November, $4,241.50, for which an estimate had been given, and for which a warrant would be due on the 25th of that month. And there was also $1,893.65 earned by the contractor in December for which no estimate was ever issued and which has not been paid. On December 18, after there had been some discussion between the contractor and the representatives of the city, with reference to the difficulties which caused the

sealing of the tunnel, and with reference to further proceeding with the work, the city engineer wrote the contractor a letter, bearing that date, saying that the work was not proceeding in a satisfactory manner and that he was led to the conclusion that the contract would not be completed within the specified time, and

"You are therefore notified at this time that, unless you shall proceed with said work within five days from the date of this notice, you are cited to appear before the board of public works and show cause why steps should not be taken to declare you in default on your contract."

At about the time this letter was received by the contractor, and before he had any time within which to determine how to proceed to overcome the difficulties encountered in the work and complete the contract, he learned, by inquiry at the office of the city comptroller, that the superintendent of the water department had filed with the comptroller a written memorandum directing the comptroller to withhold the warrant for $4,241.50 until further advices. The contractor's payroll was then due. It appears clearly that the withholding of the warrant prevented his further financing the work, and the warrant being refused, he elected to treat it as a breach of the contract on the part of the city, and did not thereafter undertake to resume work on the contract.

The city thereupon, about the 14th of January, 1924, purported to cancel the contract, and still later let a new contract to another, under which the work was finally completed. Thereupon the city brought this suit against the contractor and his bondsman, claiming that, by reason of the contractor's default, it was obliged to relet the contract, and that by doing so the work cost the city $88,611.56 more than it would have cost under the Sparger contract. And by a second and

a third cause of action the city also claimed items for the furnishing of electric energy for power and for installation. As to these items there is practically no dispute.

A jury was impaneled to hear the cause, and after all the evidence had been received, each party moved for an instructed verdict, and the court thereupon, with the consent of all, or at least without objection, discharged the jury, and made findings of fact and conclusions of law, and entered judgment, whereby it denied to the city any relief on its first cause of action, but granted its demands upon its second and third causes of action, though refusing to render judgment thereon against the bond, and awarding to Sparger, upon his counterclaim, the amount which he has earned under the contract and which was unpaid on December 17, 1923. The city's claims as allowed, being the smaller, were offset, and respondent Sparger was by the judgment allowed recovery of the overplus in his favor. The city has appealed from the judgment.

[1] As we see it, the question here presented is one of fact only. The record is long and involved, much of the evidence being of a technical character; but, after a painstaking study of it, notwithstanding that the burden of establishing his affirmative defense was upon respondent Sparger, we feel satisfied that the trial court reached a correct conclusion. It is not seriously contended that the city gained any rights by reason of its engineer's letter of December 18, 1923, nor could it be, as the city made no attempt, even if the conditions were as stated in the letter, to proceed under the terms of the contract. The burden was on the city to show an abandonment of the work, and that burden it has failed to sustain. The failure of the city to pay the estimate due in December is an admitted

5—147 WASH.

fact, and since such failure to pay was not justified by a previous abandonment of the work by the contractor, it was in itself a breach of the contract justifying the contractor in refusing to proceed with the work. *Bishop v. Ryan Construction Co.*, 106 Wash. 254, 180 Pac. 126; *Dyer v. Middle Kittitas Irr. Dist.*, 25 Wash. 80, 64 Pac. 1009.

The controlling facts found by the trial court are shown in the following quotation from his findings:

"That by the terms of said contract as hereinabove set forth, it was provided that during the time allowed by the board of public works of the city of Seattle for the completion of said contract, the city engineer of the city of Seattle, on the 1st day of each month, should issue an estimate of the amount of work completed during the previous month by the contractor, and that the city comptroller of the said city, on or about the 25th day of the month following the issuance of said estimate of the city engineer, should deliver to the contractor a warrant in the amount equal to such estimate, less certain percentages to be retained therefrom as in said contract specified; that said provision of said contract with reference to monthly payments by the city of Seattle to the defendant R. L. Sparger of the amounts earned by him during the preceding month was a material term of said contract, and was a condition precedent to the continuous performance thereof, and a prompt and regular compliance therewith was essential and necessary to enable the said defendant R. L. Sparger to do the work required to be performed by him by the other terms of said contract.

"That on or about the 1st day of December, 1923, the city engineer of the said city of Seattle issued an estimate of the amount of work completed by said R. L. Sparger under said contract during the month of November, 1923, by which estimate, after the deduction of the percentages hereinabove referred to, the said defendant R. L. Sparger was shown to have earned under said contract and to be entitled to com-

pensation therefor in the net sum of $4,241.50. That said item of $4,241.50 is the same item and same amount hereinabove referred to in finding No. VIII.

"That on the 17th day of December, 1923, although the said defendant R. L. Sparger had not been declared to be in default on his contract, the plaintiff, the city of Seattle, acting wrongfully and without justification, and contrary to the terms and conditions and provisions of said contract, notified the said defendant R. L. Sparger that it would not pay to him the amount of said estimate for the month of November, 1923, and that it would not deliver to him said warrant in the said sum of $4,241.50 on the 25th day of December, 1923, or at all; that thereafter and subsequent to said 17th day of December, 1923, the defendant R. L. Sparger, as collateral security, assigned the said warrant to George W. Rourke; that the said George W. Rourke on or about the 25th day of December, 1923, on his own behalf and on behalf of said defendant Sparger, demanded from the city comptroller of the city of Seattle the delivery of said warrant; that the delivery of the same at said time was and ever since has been refused; that the acts and conduct of the plaintiff, the city of Seattle, constituted a breach of said contract on the part of the plaintiff; that thereafter, because of said wrongful and unjustifiable breach of said contract by the plaintiff, the city of Seattle, the defendant R. L. Sparger elected to treat the said contract as breached by the city of Seattle and did no further work thereunder; that prior to the commencement of this action the said George W. Rourke reassigned said warrant to the said R. L. Sparger, who is now the owner and entitled to the proceeds thereof."

A further discussion of the facts would not be helpful, and being convinced that the evidence preponderates in favor of the findings of the trial court, the judgment appealed from is affirmed.

MACKINTOSH, C. J., PARKER, FRENCH, and MITCHELL, JJ., concur.