### No. 265.

### J. Bailey Peyton vs. Texas and Pacific Railway Company.

It is negligence on the part of a railroad company, in running accommodation trains through a city to a fair grounds in the suburbs, where large numbers of people congregate around the station, to use an inferior locomotive, run by a fireman instead of a skilled engineer, and to run its trains at a dangerous speed in approaching the station.

It is not contributory negligence in a person to risk his life or place himself in a position of great danger, in an effort to save the life of another or to rescue another from a sudden peril or great bodily harm.

"The law has so great a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons."

The allowance of excessive damages by juries for personal injuries must be discountenanced.

APPEAL from the First District Court, Parish of Caddo.
   *Hicks*, J.

*M. S. Jones*, *M. C. Elstner* and *Bell* and *Randolph* for Plaintiff and
Appellee:

1.   The law has so great a regard for human life that it will not impute negligence to an effort
     to preserve it, if the effort is made with a reasonable regard for the rescuer's own safety.
     Eckert vs. Long Island R. Co., 3 Am. 721; Donahue vs. Wabash and St. L. Pac. R. Co.,
     53 Ann. 594; Beach on Contributory Negligence, p. 45, sec. 15; Thompson on Negligence,
     vol. 2, p. 1174, Sec. 21; Pierce on Railroads, p. 328; Rorer on Railroads, p. 1029.

2.   Where negligence on the part of defendant is shown, the negligence of the person in
     danger cannot be imputed to the rescuer. See authorities above.

3.   When wilful negligence on the part of defendant is established, the question of contribu-
     tory negligence cannot arise. The defendant is liable absolutely. Rorer on Railroads, p.
     872; 17 Am. 12; Battishill vs. Humphreys 38 N. W., 581–586; Barksdull vs. N. O. N. C. &
     G. Ry. Co., 23 Ann. 180–182; Faren vs. Sellers & Co., 39 Ann. 1011.

4.   Where the verdict of the jury is not manifestly erroneous, it will not be disturbed. In
     the assessment of damages the parties are entitled to the judgment of the jury, and not
     of the court. Thompson on Negligence, Vol. 2, p. 1266; 37 Ann. 92, 94, 219, 226, 230; 37
     Ann. 655.

5.   Courts will not set aside verdict on the ground that damages are excessive or inadequate
     unless it is apparent that the jury acted under some bias, prejudice, or improper influence;
     mere difference of judgment is not sufficient.

6.   Where the verdict is expressly approved by the trial judge, it carries great weight an
     should not be disturbed. 39 Ann. 929.

*Wise & Herndon* for Defendant and Appellant.

The opinion of the court was delivered by

POCHÉ, J.   Plaintiff claims damages in the sum of $40,000 for per-
sonal injuries inflicted on him by one of the defendant's trains, through
the alleged carelessness and fault of the railroad employes.

The defense is a general denial, coupled with the plea of contributory
negligence.

Defendant appeals from a verdict and judgment in the sum of
$25,000.

The evidence is conflicting on all the pertinent and material facts in-
volved in the controversy.

After a thorough study of the record we find, from the preponderance
of the testimony, the following substantial facts as bearing on the issues
of negligence on the part of the company, and of contributory negli-
gence on the part of plaintiff:

The accident occurred in November, 1888, at or near the Fair Grounds
situated on the outskirts of the City of Shreveport, while a fair was

being held there. During the week of the fair, the company ran accommodation trains from its depot in the city to the grounds and back on a schedule of fifteen minutes each way.

While plaintiff and a large number of other visitors at the fair were standing on a temporary platform erected near the grounds, awaiting an outgoing train on which they intended to return to the city, he noticed on the track, and in dangerous proximity to the approaching train, a person, who was a friend of his, and who was in an inebriate condition, standing with his back to the train, and apparently unconscious of threatened peril. He at once resolved to save his friend, and running to him he succeeded in pushing him off the track, but was himself struck by the pilot beam of the locomotive to which the train was attached; and received injuries from which he suffered great pains, was disabled for several months, and from which he was not yet relieved at the time the case was tried below, at the end of the past month.

We are satisfied from the preponderance of the testimony, which is very conflicting on this point, that in approaching that platform, full of people of all ages, which was the regular fair grounds station for the defendant's accommodation trains, situated at the intersection of a public thoroughfare, the train was driven with unusual speed and at a dangerous rate, without which the accident would not have occurred. It is also in proof that the locomotive used on the occasion was a switch engine, not such as should be used to carry great numbers of passengers, and that it was in the charge of a fireman, not a regular or competent engineer, who was at that moment performing the the functions of the regular engineer, the latter having absented himself in order to go to his evening meal.

All these circumstances combine together to make a clear case of negligence against the company.

The question of contributory negligence must now be met.

The argument on that point is that plaintiff brought on the accident himself by his reckless attempt to jump on a railroad track immediately in front of an approaching train, at a close and dangerous distance from it.

Plaintiff testifies, and he is corroborated by several unimpeached eye-witness, that without his, or other prompt assistance, the intoxicated man on the track would have been run over and probably killed.

Plaintiff, who was a strong and vigorous man of more than ordinary strength, states that from the appearance of things, he believed that he could save the man and avoid injury himself.

Similar positions and circumstances have several times been presented

to judicial investigation, as involving the question of negligence, and have been variously construed. But the opinion which commends itself to our approbation, as resting on sound principles of humanity, is to the effect that they do not constitute contributory negligence on the part of the person who is injured in the attempt. Text writers on railroad law and kindred subjects have formulated the rule thus:

"When one risks his life or places himself in a position of great danger, in an effort to save the life of another, or to protect another who is exposed to a sudden peril, or in danger of great bodily harm, it is held that such exposure and risk for such a purpose is not negligent. The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons."

The principle was culled from a well considered opinion of the Court of Appeals of New York in the case of Eckert vs. Long Island R. R. Co., reported in 43 N. Y. 503; Beach on Contributory Negligence, p. 45; Thompson on Negligence, vol. 2, p. 1174; Pierce on Railroads, p. 328; Rorer on Railroads, p. 1209.

The ruling has received subsequent judicial sanction, and appreciating it as rational and as tending to foster a proper spirit of generous impulses towards persons who are in danger, we add our indorsement to that of other courts of last resort in other States of the American Union.

The evidence is satisfactory on the point that the attempt of plaintiff to save the life of a human being, or at least to rescue him from imminent peril, can not be characterized as rash or reckless in the judgment of prudent men, and that his venture would have been successful and harmless if the train had not approached the station with reprehensible speed.

We now approach the question of the quantum of damages which plaintiff should recover in the case. In view of the finding of the jury, which met with the approval of the district judge in his refusal of a new trial, the solution of that question, to our satisfaction, under our desire and our duty to do even-handed justice to both litigants, has not been free of difficulty, and hence it has cost us much thought and study.

As we have had occasion to say in several cases: "While we do not pretend to lay down any exact arithmetical rule of proportion in the estimate of damages, yet they must bear some kind of reasonable relation to each other in different cases—with the reserve, however, that damages should always be substantial." Towns vs. R. R., 37 Ann. 636.

A review of our reports in similar cases points to only two occasions

on which this court has allowed damages in excess of $10,000 for personal injuries, and these were for very grievous and permanent results: Barksdale's case, 23 Ann. 180; Chapin's case, 17 Ann. 19.

Among other cases we find an allowance of $7000 for an accident resulting in the death of the head of a large family, to whom he was the only support; another allowance of $5000 for the death of a man similarly situated, and, in another case, a judgment of $3000 for a like result. Curley's case, 40 Ann. 810; Feran vs. Sellers, 39 Ann. 1011; Clairain vs. Telegraph Co., 40 Ann. 178.

And in as far as our observation has gone, we find that the courts of other States of the Union have not reached as high figures as this court has allowed.

Substantial damages must be awarded in proper cases, but by all means speculative litigation must be discouraged and possibly checked.

Now, in the present case, we have no hesitation in saying that the verdict is largely excessive, and beyond all measure and all precedents.

That the plaintiff was seriously injured, that he suffered great pain; was exposed to loss of time, loss of business and to large expenses for medical assistance cannot be denied, and evidence to that effect is uncontradicted; but it is equally true that he has rapidly improved under medical treatment; that for months he has been able to walk, go about and attend to business, without the use of crutches, and without the need of assistance; and above all that he is yet alive, fully able to earn his livelihood and well disposed to enjoy life.

His most serious injury, and the most irritating cause of his sufferings is the inflammation in his hip-joint. But competent physicians, some of whom have rendered him professional services, and others, who have critically examined him, all testify that with proper treatment, prudent care and attention he can be radically cured.

Great reliance is placed by his counsel, as a fruitful source of damages, on the fact that he is now afflicted with Hernia, characterized by symptoms of threatening strangulation, which they confidently attribute to the railroad accident. Plaintiff himself testifies that it is a result of the blow which he then and there received. But of course his testimony is not that of an expert, and none of the physicians who were examined testify directly in the same sense. One of them says: "It (Hernia) is frequently the result of direct violence, but I can't say as to this." True plaintiff says that one of the physicians who attended to him at his home for several days saw his hernia and pronounced it very serious and perhaps dangerous. But this is merely hearsay, and a strange

co-incidence must be noted in this connection: the failure of plaintiff to take the testimony of that physician and of another physician of his neighborhood, who rendered the first medical aid which he received after the accident.

Nothing in the nature of this case or in the surrounding circumstances can legally screen this party from the effect of the rule which jurisprudence applies to litigants who fail to produce important testimony easily within their reach, and presumably under their control. Ketchum vs. R. R., 38 Ann. 779; Day vs. R. R., 35 Ann. 694.

We are constrained to notice another circumstance which goes a great way to negative the assertion that hernia was one of the results of the accident. Nearly three weeks after he had been injured, plaintiff was placed, on the recommendation of his home physicians, under the treatment of Dr. M. M. Bannerman, of Grand Cane, La., as a surgeon of superior ability, who then took him and had him under his charge for more than a month, including three weeks during which he was under the doctor's own roof, receiving his daily and almost constant attentions of the most intimate character. And yet in his testimony Dr. Bannerman does not make a single reference to hernia in connection with his patient. Far from it, his testimony contains the following very significant statement: "Plaintiff, during my treatment, complained of no other injury resulting from the railroad accident, except that in his hip-joint."

It is in proof, and plaintiff himself testifies that many years ago he was ruptured on the right side, and it is shown that he is now ruptured on both sides, but the evidence entirely fails to trace the second rupture to the railroad accident.

That element of damages must therefore be eliminated from the case.

And we therefore conclude that an allowance of $5000 is amply sufficient to compensate plaintiff for all the pains that he has suffered, the loss of business and of time that he has incurred, to meet the expenses of past medical attendance, and to secure the future treatment and attention needed to fully restore him from the effects of the injuries which he received. To allow more. would be enriching one litigant at the expense of the other.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount of damages to be recovered by plaintiff from twenty-five to five thousand dollars, and that, as thus amended, said judgment be affirmed, and that costs of appeal be taxed to plaintiff.