[No. 1089. Decided January 8, 1895.]

JAMES LYNCH ET AL., *Appellants*, *v.* OTTILIE RICHTER, *Respondent.*

ESTOPPEL—EJECTMENT—ELECTION BETWEEN DEFENSES—BURDEN OF PROOF—INSTRUCTIONS.

Where land has been conveyed under a forged power of attorney purporting to be executed by the owners to their son, and the parents

do not disavow the act of the son when it becomes known to them, but allow the grantee and those claiming under him to remain in possession for several years, making valuable improvements, the owners are estopped from denying the validity of the power of attorney.

In an action of ejectment where a plaintiff fails to require an election by the defendant, when he has pleaded an affirmative defense inconsistent with his denials, the plaintiff cannot take advantage of the defects in the answer by way of request for instructions, to the effect that the burden of proof was upon the defendant to show want of title in the plaintiffs.

When defendant has been allowed to open and close the proofs, without objection on the part of plaintiff in an action of ejectment, the plaintiff is not thereby entitled to an instruction that the burden of proof is upon defendant to show title in plaintiff.

### Appeal from Superior Court, King County.

### John W. Corson and James B. Howe, for appellants.

One in possession of land holding under mere color of title cannot charge owner with estoppel unless the owner in some way induced or influenced party in possession or those under whom he claimed to purchase or make improvements, and the knowledge on the part of the legal owner of the adverse possession or improvements would not amount to an estoppel. *Bullene v. Garrison*, 1 Wash. T. 588; 7 Am. & Eng. Enc. Law, 16, 17, and cases cited; Herman, Estoppel, § 429. Misapprehension, ignorance, or even ordinary negligence on the part of the plaintiff would not create an estoppel unless he intended to deceive defendant, and, in the absence of a direct intention to deceive, culpable and gross negligence or fraud would be necessary to create an estoppel. Herman, Estoppel, § 442; *Danforth v. Adams*, 29 Conn. 107; *Taylor v. Ely*, 25 Conn. 250; *Turner v. Coffin*, 12 Allen, 401; *Plumer v. Lord*, 9 Allen, 455.

Belief in the validity of the title cannot avail where the foundation of the title is forgery. *Sampeyreac v. United States*, 7 Pet. 222; *Gray v. Jones*, 14 Fed. 83; Bishop, Contracts, §§ 676, 699; *Meley v. Collins*, 41 Cal. 663; *Everts v. Agnes*, 6 Wis. 453; *Tisher v. Beckwith*, 30 Wis. 55; *Davis v. Bank of England*, 2 Bing. 393; *Reck v. Clapp*, 98 Pa. St. 581. Mere knowledge by the owner of land of the existence of a forged title on the records of the county in which the land is situated, and delay in asserting his right, will not constitute an estoppel. Some affirmative act of the owner must be shown, as,

for example, that he, by word or act, created the impression that the adverse title was valid. *Chamberlain. v. Showalter*, 23 S. W. 1017; Herman, Estoppel, § 976; *Scharman v. Scharman*, 56 N. W. 704.

*Thompson, Edsen & Humphries, W. S. Relfe* and *B. K. Knapp*, for respondent.

Everyone who encourages or even stands by and sanctions the acquisition of land by another, will not only be estopped from invalidating title thus acquired by the subsequent assertion of a title which he held with full knowledge at the time, but may be compelled to execute a conveyance to the purchaser. *Alexander v. Woodford, etc., Fish Co.*, 14 S. W. 80; *Forbes v. McCoy*, 40 N. W. 132; *Hafter v. Strange*, 3 South. 190; 2 Pomeroy, Eq. Jur., § 917. A party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action against the person whom he has himself assisted in deceiving. *Stevens v. Dennett*, 51 N. H. 324; *Blair v. Wait*, 69 N. Y. 113; *Gregg v. Von Phul*, 1 Wall. 274; *Morgan v. Railroad Co.*, 96 U. S. 716; *Breeding v. Stamper*, 18 B. Mon. 175; *Hill v. Epley*, 31 Pa. St. 334; *Thompson v. Sanborn*, 11 N. H. 201; *Buckingham v. Smith*, 10 Ohio, 288; *Gregg v. Wells*, 10 Ad. & E. 90.

The opinion of the court was delivered by

HOYT, J.—James T. Lynch and John F. Lynch were children of the plaintiffs, and resided in Seattle. Their parents resided in Oswego, New York. In 1883, John F. Lynch wrote plaintiffs, requesting them to send him some money to invest in real estate. In compliance with his request they sent to him $750 for that purpose. At the same time they sent an equal amount to his brother. The reason given for sending the money to the brother was that they desired to treat both sons alike. There was no evidence tending to prove that the brother was not to use the money sent him as his own; but there was proof tending to show that the money sent John F. was to be invested in real estate for the plaintiffs. It was invested by him in his own name in property, the title to a part of which is in controversy in this action. After the lapse of a considerable time he made a deed thereof to his parents and received from them a power of attorney

authorizing him to sell the property. For some reason not fully disclosed by the record, the power of attorney was afterwards returned to plaintiffs and retained by them. In 1888 the said John F. Lynch exhibited what purported to be a power of attorney from plaintiffs, and on the strength thereof sold the property in question to one George Probst, under whom the defendant claims.

At the time the property was so sold it was unimproved and so remained until purchased by the defendant. She made improvements thereon of the value of $1,500, before she had any notice of the claim of plaintiffs, or of any other fact which would lead her to suppose that there was any defect in the title, which from the records in the auditor's office appeared to be perfect. She relied upon such record and supposed she had an absolute, indefeasible title in fee. Soon after the sale by said John F. Lynch, the fact that he had made it and in so doing had acted under what purported to be a power of attorney from plaintiffs, was communicated to them. They took no steps to disavow the act of their son under such purported power of attorney until about the time this suit was brought in 1891.

The ground upon which possession of the property was sought in this action was that the power of attorney under which John F. Lynch had acted was a forgery. The question is presented as to the right of the plaintiffs under these circumstances to now take advantage of the fact, if fact it was, of the forgery of said power of attorney. It it claimed that there was no such standing by and allowing improvements to be made on the property to which they claimed title, by the appellants, as to estop them from asserting such title. It may be conceded that if the title under which the property was held by the one who had improved it had not purported to have been derived from them, their acts and acquiescence would not have been sufficient to have estopped them from asserting title. But under the circumstances of this case the duty of the owners was different. In the chain of title was a deed purporting to have been made by their authority, and they had knowledge of that fact. In such a

case equity and good conscience required prompt disavowance of the transaction. Especially was this so in view of the fact that the one who purported to act by their authority had at one time been fully invested with such authority.

The fact that he was their son and therefore likely to be charged with the trust, made it their duty to disavow his unauthorized act done in their name at the earliest practicable time. Besides, the circumstance of sending to the other son, for his own use, of the same amount invested in this and the other property purchased by John F., in connection with other facts testified to by one of the plaintiffs, tends strongly to show that the purchase by John F. was upon his own account, and that he afterwards deeded it to plaintiffs for his own convenience. It is true that plaintiffs testify that he was to invest the $750 for them; but this testimony was materially affected by the statement in reference to the transaction by which the $1,500 was sent to the two sons, $750 to each.

However this may be, the entire proofs show that until after the conveyance of the property in the name of the plaintiffs, the son had been trusted to do any and all things required in regard to it. They had given him full power to sell it, and had done nothing to show the public, or one dealing with the property, that such power had been revoked.

This being so, their duty was imperative to take steps which, to the fullest extent, would warn the one to whom the son had conveyed the property in their name, and those holding under him, so soon as the fact of the sale by him in their name became known to them. This they did not do. It is true that there was some testimony tending to show that they wrote a letter to Probst, but something more than this was required of them. They should not only have notified the purchaser, but should have seen that notice was conveyed to the one in possession of the property making improvements thereon. Besides, the letter to Probst seems to have been written as much with a view to procuring immunity from criminal prosecution for the son as for the purpose of disavowing his authority to make the sale.

Under all the circumstances disclosed by the record, we think that the plaintiffs should be held to have ratified the action of their son in forging the power of attorney, and should be bound by his acts thereunder.   If their action was not such as to amount to a complete ratification of the execution of the power of attorney, it was, when taken in connection with the improvements upon the land, sufficient to estop them from asserting title thereto.

What we have said shows that the result of the trial was what equity and good conscience required ; and such being the case, we should be slow to reverse the judgment on account of alleged technical errors.   However, we are not satisfied that there were any such errors.   The only ones urged in the brief of appellants grew out of the instructions given the jury.   Plaintiffs requested the court to instruct the jury that the burden of proof was upon the defendant to show want of title in the plaintiffs, and their first error is founded upon the refusal of the court to comply with such request.   The ground of this request was that the affirmative defense was inconsistent with the denials in the answer. It is not necessary for us to determine at this time what are inconsistent defenses ; nor as to whether or not such defenses are allowable under our statute ; for the reason that in our opinion the plaintiffs did not take the proper steps to make available defects of that kind in the answer.   If in their opinion inconsistent defenses had been pleaded, they should have required an election on the part of the defendant as to which one of them he would rely upon.   Not having done so, they cannot take advantage of such defects in the answer by way of request for instructions.   Another reason for the request was that the defendant had been allowed to open and close the proofs.   No objection to this course was made and no rights could be gained or lost thereby.

The questions raised upon the other instructions have been substantially determined by what has been said.   The objections on the part of the plaintiffs were founded upon their contention that there was no proof which authorized a finding of ratification or estoppel.   In our view of the law,

as applied to the proofs above set forth, the instructions complained of were correct in substance, though perhaps not in all respects as carefully worded as they should have been.

The judgment will be affirmed.

DUNBAR, C. J., and STILES and SCOTT, JJ., concur.