St. Louis Southwestern Railway Company *v.* Reagan.

Opinion delivered July 2, 1906.

1.  Contract to furnish transportation—Damages.—Where a railway company undertook to furnish free transportation to its hospital to

its employees in case of injury, and delayed doing so, the employee can not recover for pain and suffering caused by the delay under such circumstances if he had it in his own power to avoid such increase of injury by paying his fare. (Page 488.)

2.. SAME.—Where a railroad company undertook to furnish free transportation to an employee, and failed to do so, the employee can recover only those damages which are the natural and proximate consequences of the breach; thus where the employee had the money with which to purchase a ticket, the natural and ordinary damages which would result from a breach of the contract would be the price of the transportation agreed to be furnished. (Page 489.)

Appeal from Miller Circuit Court; *Joel D. Conway,* Judge; reversed.

STATEMENT BY THE COURT.

John Reagan was, in 1904, a section foreman in charge of section No. 50 on defendant's road. This section was located at and near Stephens, Ouachita County. On the 8th day of February, 1904, while riding on a handcar in the course of his duties, Reagan was injured by the explosion of a torpedo which had been placed on the track to warn passing trains. The injury was caused by a piece of tin from the torpedo striking the leg of defendant with such force that it penetrated the flesh and lodged between the two bones of the leg. Reagan went to the local surgeon at Camden, who gave him the following certificate:

"This is to certify that John Reagan is badly, and must go to hospital at Tyler, Texas.

[Signed]          "G. W. HUDSON, Local Surgeon."

The word "hurt" or "injured" was evidently omitted from this certificate by mistake, but the meaning thereof is plain.

Reagan boarded the train with this certificate, but the conductor informed him that he could not receive it in lieu of a pass, and that he must procure a pass or ticket from the proper person or pay fare. Reagan then told the conductor he would go to Stephens, the next station, where he lived, and was allowed to do so. Reagan got off the train at Stephens, and sent a telegram to Davis, the roadmaster, asking him to furnish him a pass for transportation to Tyler. By a series of accidents this pass was not received until the 12th of February. After the pass was received Reagan went to the hospital at Tyler, Texas. But there

was some delay in performing the operation to remove the piece of tin, and the tin was not taken out of his leg until about 24 hours after his arrival. When the operation was performed, the leg had become badly swollen and poisoned by the tin, which was imbedded between the two bones of his leg. About a pint of clotted blood and pus was removed from the leg. The wound healed slowly, and Reagan was confined at the hospital about four weeks on account of the injury, and had not fully recovered from the effects of the injury at the time of the trial.

He brought an action against the defendant company to recover damages caused by delay in furnishing transportation to the hospital at Tyler and by delay in operating after his arrival. The defendant filed an answer, and on the trial the evidence showed a certain amount was deducted by the company from the wages of its employees as a fund to maintain a hospital for injured employees of defendant. This and other facts proved tended to show that there was a contract between the defendant and its employees that if the employee was injured while in the service of the company it would furnish prompt transportation to its hospital and treatment there free of charge.

The court, among other instructions, gave the following instruction to the jury:

"You are instructed that, if you believe from the evidence that the plaintiff was delayed in receiving transportation which he had a right to expect from the facts in this case, if such facts are proved, he is entitled to recover for whatever suffering and pain there may have been caused by reason of the delay in furnishing him transportation, notwithstanding he may have been able to pay his transportation."

And refused to give the following instruction asked by the defendant:

"1. The jury are instructed that if they find from the evidence that the plaintiff was injured while in the service of the defendant company, and was entitled, by virtue of an implied contract with defendant, to be transported, free of charge, to its hospital at Tyler, Texas, for treatment, and that defendant failed or neglected to promptly furnish transportation to plaintiff to go to the hospital, and by reason thereof plaintiff's injury was increased, and you further find that the plaintiff had the means by

which he could have paid his way and thereby reached the hospital promptly, it was his duty to have done so, and thereby avoided increased injury; and if you find he did have the means, and failed or neglected to use it, he can not recover any sum as damages which resulted from the delay of defendant in furnishing him transportation to the hospital."

There was a verdict and judgment in favor of plaintiff for the sum of $2,000, and the defendant appealed.

*S. H. West* and *Gaughan & Sifford,* for appellant.

1. As now pending, this is a suit for breach of contract, in no way sounding in tort. The question, therefore, whether appellee had the means to pay for transportation to the hospital at Tyler promptly was pertinent, and the court should have admitted testimony to prove it, and should also have given the first instruction asked by appellant. Sedgwick on Dam. (8 Ed.), § § 201, 202, 205-6, 209; 39 Ark. 347; 15 Fed. 57.

2. It was error to instruct the jury that, if appellee was delayed in receiving transportation which he had a right to expect, he was entitled to recover for suffering and pain caused by such delay, notwithstanding he may have been able to pay his transportation. *Supra.*

*Scott & Head,* for appellee.

1. It was for the breach of duty on the part of appellant in failing to send appellee with reasonable promptness to its hospital that this action was brought. When appellant each month deducted 40 cents from appellee's wages, it contracted with, and owed the duty to, appellee to carry him promptly, when injured, to its hospital. 54 S. W. 791. By the payment of the monthly assessments he has paid to be carried to the hospital when injured, and was in all respects the same as a passenger who has paid for and is entitled to a ticket. This case is controlled by 65 Ark. 175.

2. The first instruction asked by appellant fails to take into consideration whether or not appellee failed to take reasonable measures *within his knowledge* to diminish his loss.

RIDDICK, J., (after stating the facts.) This is an appeal from a judgment for the sum of $2,000 rendered against the defendant company for failure to furnish the plaintiff prompt

transportation to its hospital, and prompt treatment after his arrival.

The presiding judge instructed the jury that if there was an agreement by the company in case of injury to furnish the plaintiff transportation to its hospital, and it failed to do so, plaintiff was entitled to recover whatever suffering and pain there may have been caused to plaintiff by reason of the delay in furnishing him transportation, notwithstanding he may have been able to pay for such transportation. Now, a ticket from Stephens, Arkansas, where plaintiff lived, to Tyler, Texas, where the hospital of defendant was located, cost but six dollars, and the defendant company offered evidence to show that plaintiff had at all times an ample supply of money to have paid for this transportation, he had desired to do so, and that, when he arrived at the hospital, he had over $3,000 cash in his possession. Instead of paying his fare and compelling the company to restore the amount paid afterwards, he chose to wait for the pass. This delay no doubt acted unfavorably upon his wound, and was the cause of considerable suffering on the part of plaintiff: but, as he had it in his power to have avoided this delay and injury by buying a ticket, we think it was his duty to have done so. Suppose the company had never furnished him a ticket, could he, with $3,000 in his pocket, have been justified in refusing to spend six dollars for a ticket and in allowing his leg to mortify so that amputation would be necessary? and, if he did so, could he justly demand of the company compensation for the loss of a leg? It was the duty of plaintiff, when the company failed to carry out its contract, to do what he reasonably could to avoid further injury to himself, and we are of the opinion that he can not recover for pain and suffering caused by the delay under such circumstances, for he had it in his power to have avoided such injury. *Hall* v. *Memphis & C. R. Co.,* 15 Fed. 57; *Louisville & Nashville R. Co.* v. *Spink,* 104 Ga. 692.

The decision of this court in the case of *Hot Springs Ry. Co.* v. *Deloney,* 65 Ark. 177, does not conflict with our conclusion here, for that was a case of an unlawful ejection of a passenger at a point between stations. In such cases there is an element of tort, and the court said that the passenger could recover "for the loss of time and trouble in having to walk back

to Hot Springs, and such humiliation as he was made to undergo by being put off," but that he could not recover damages for mental anguish caused by the resulting delay in reaching his sick brother, and the judgment was reversed on account of an improper instruction on that point.

But this case has none of the elements of a tort, for plaintiff was not ejected from the train. He does not complain that the conductor at the time he boarded the train at Camden refused to carry him beyond Stephens, for he had neither pass nor ticket, and did not offer to pay fare. He got off at Stephens, and for the first time notified the defendant company that he needed a pass to go to Tyler. He claims only that the defendant was bound under its contract to furnish him transportation to the hospital when thus notified. We may concede that this contention was well taken, but it does not follow that plaintiff can recover for pain and suffering caused by delay in reaching the hospital. It must be remembered that the railway company was under no obligation to enter into a contract of the kind set up by this plaintiff. The law requires railway companies to carry passengers who present themselves at the proper time and place and tender the amount required for transportation of passengers. A breach of a contract of that kind by ejecting a passenger who has paid his fare is a violation of a duty which the company owes to the public for which the passenger ejected may recover his damages in an action for tort. But in this case the law did not require the companay to enter into a contract to carry its employees to a hospital when injured. In refusing to perform such a contract the company was guilty of no breach of duty to the public, nor of any tort. The damages must be assessed as in ordinary cases of breach of contract, and only such damages can be recovered as are the natural and proximate consequences of the defendant's breach of the contract. *Louisville & Nashville R. Co.* v. *Spink,* 104 Ga. 692; 3 Sutherland on Damages, § 899.

When a party has the money with which to purchase a ticket, the natural and ordinary damages which would result from a breach of a contract to give him free transportation would be the price of the transportation agreed to be furnished. If plaintiff in this case had the money with which to have purchased a ticket, we see no reason why he should be allowed to recover damages

for failing to furnish a ticket, beyond the price of the ticket. For if, having the money to buy a ticket, he voluntarily exposed himself to this additional pain and suffering, rather than pay the price of a ticket, his suffering caused by the delay is as much due to his own inaction as to that of the defendant, and he ought not to be allowed to 'hold' the defendant liable for pain and suffering that he could have avoided by such a slight expenditure on his part.

We are therefore of the opinion that the court erred in refusing to allow evidence that plaintiff had money with which he could have bought a ticket to Tyler.  He also, we think, erred not only in giving the instruction to which we have referred, bu in refusing to give instruction number one asked by the defendant, which stated the law substantially as set forth in this opinion.

Judgment reversed, and cause remanded for a new trial.