[No. 9397. Department One. July 20, 1911.]

EDWIN D. HARDING, *Appellant*, v. OSTRANDER RAILWAY AND TIMBER COMPANY, *Respondent*.[1]

MASTER AND SERVANT—INCOMPETENT FELLOW SERVANT—PLEADING —COMPLAINT. A complaint alleging the incompetence of plaintiff's assistant, by reason of deafness, a fact known to the defendant and not known to the plaintiff, and that plaintiff was injured by reason of stopping to give a second warning to protect the assistant and property in his care, states a cause of action.

. SAME—CONTRIBUTORY NEGLIGENCE—ACTS IN EMERGENCIES—PLEAD-ING—COMPLAINT. A timber faller, injured by a falling tree, is not shown to be guilty of contributory negligence by his complaint alleging that, by reason of the deafness of his assistant, a fact known to the defendant and not known to him, he was compelled to remain in a place of danger to give a second warning to the assistant and to remove a cross-cut saw which it was the assistant's

[1]Reported in 116 Pac. 635.

duty to remove; contributory negligence not being imputable to acts in emergencies to save human life, and acts to save property being measured by the standard of ordinary prudence in like situations.

SAME—NEGLIGENCE—MEDICAL TREATMENT—FREE TRANSPORTATION TO HOSPITAL. A lumber company that withholds a hospital fee from the wages of employees, for maintaining a hospital, is under an implied obligation to furnish free transportation to an employee, injured and prostrate in the woods, where it had a logging road with engines and equipment at hand for conveying him to the hospital; and is liable for injuries resulting from unreasonable delay in so doing.

DAMAGES—MINIMIZING LOSS—PLEADING—COMPLAINT. A complaint alleging that the plaintiff was prostrate in the woods, sufficiently shows that the aggravation of injuries from defendant's delay in conveying him to the hospital was not due to the neglect of the plaintiff.

ACTIONS—JOINDER—CONTRACT AND TORT — CAUSES ARISING FROM SAME TRANSACTION—MASTER AND SERVANT. Where an employer maintained a hospital by hospital fees retained from wages of employees, causes of action for personal injuries sustained through the employment of incompetent fellow servants, and for failure to use reasonable diligence in carrying plaintiff to the hospital for treatment, both spring from contractual relations, even if one sounds in tort and the other in contract; and in any event, may be joined under Rem. & Bal. Code, § 296, providing that the plaintiff may unite several causes of action when they all arise out of the same transaction.

PLEADING—DEMURRER—SEPARATE STATEMENT OF CAUSES. An objection that causes of action are not separately stated cannot be raised by demurrer, but only by motion.

Appeal from a judgment of the superior court for Cowlitz county, McMaster, J., entered October 5, 1910, upon sustaining a demurrer to the complaint, dismissing an action for personal injuries sustained by a logger in the falling of a tree. Reversed.

*B. B. Adams* and *Isham N. Smith*, for appellant.

*Joseph O'Neil* and *Wilbur & Spencer*, for respondent.

GOSE, J.—The plaintiff has appealed from an order sustaining a demurrer to the amended complaint and dismissing

the action. The complaint is of too great length to be set forth in full, but in substance it alleges that, at the time the appellant sustained the injuries of which he complains, he was an able-bodied man in the employ of respondent as a head timber faller; that he had been in its employ for a period of eleven months; that during that time the respondent had an established rule governing its employees by which it exacted and withheld from their wages the sum of one dollar per month, which it used in the maintenance of a hospital for the care and treatment of its injured employees; that he had as an assistant one Schultz, who was extremely hard of hearing and therefore incompetent to discharge his duties; that such infirmity and incompetency were known to the respondent and unknown to the appellant; that it was a part of the appellant's duties as head faller to warn his assistant of danger from falling trees; that while the appellant and Schultz were falling a large tree, the former notified the latter of its falling in time for both to have escaped danger, and that,

"At the time and place aforesaid, and after this plaintiff had notified the said John Schultz in time to have permitted both plaintiff and the said John Schultz to have escaped from danger of said falling tree, the said John Schultz, owing to his deafness, failed to hear the warning and failed to escape or get out of the reach of danger; and plaintiff was thereby compelled to remain at the place of danger and further and again notify John Schultz the second time of the danger of the falling tree, and was further forced to discharge duties which were the duties of the said John Schultz, to wit, that it was part of the duty of the said John Schultz to care for a large cross-cut saw which plaintiff and John Schultz used in the business of falling trees, and that it was further the duty of John Schutlz upon receiving a warning from this plaintiff to take said saw out of the place of danger, and to immediately act in response to notifications of warnings for danger. That by reason of the said delay on the part of said John Schultz, this plaintiff was compelled to and did care for and remove the cross-cut saw to prevent additional danger, and by reason of the delay caused by the incompetency of the said John Schultz, the tree upon which plaintiff and

John Schultz was there working was felled in such a manner that a large limb was broken off from said tree and in falling therefrom the said large limb fell upon and against plaintiff before plaintiff had time to attend to his duties above stated and remove himself from the place of danger, and that by such falling limb hitting plaintiff's body, plaintiff was thereby prostrated and violently stunned, and his left arm and shoulder were bruised, maimed and crushed, and the bones of his left arm were lacerated."

It is further alleged that, immediately after the injury, the respondent was notified thereof by notice to its secretary, who had charge and control of its business and whose duty it was, among other things, to send engines or trains or means of transportation into the woods to receive any of its injured servants and convey them to its hospital; that having at hand a logging road with rolling stock and engine "fired up," which it could have sent to the immediate relief of the appellant, it disregarded the notice, and failed, neglected, and refused to send means of transportation to him to convey him to the hospital, for the period of one day; that with knowledge of his condition, it permitted him to remain prostrated and without medical aid during that time, and that by reason of the delay in conveying him to the hospital for treatment, his injured arm became so swollen that, when he was taken to the hospital on the following day, it was impossible for the attending physician to render him any service for a period of about six days.

It is further alleged that, by reason of the several acts of the respondent, the appellant suffered, and will continue to suffer, grevious bodily pain and mental anguish; that he is broken in health and body, and that his arm is atrophied and withered so as to prevent him from working at any trade or business, to his damage in the sum of $67,094. The demurrer was interposed upon two grounds: (1) that several causes of action have been improperly united; and (2) that the complaint does not state facts sufficient to constitute a cause of action. The order sustaining the demurrer is silent

as to whether the court sustained it upon one or both of the grounds. The order of dismissal was entered because the appellant declined to plead further.

We will first consider the second ground of the demurrer. Briefly re-stated, the complaint alleges that the appellant's assistant was incompetent by reason of his deafness, a fact known to the respondent and unknown to the appellant; that the appellant received the injury by stopping to give a second warning to his assistant and to remove a cross-cut saw which it was the duty of the assistant to protect. It is well settled that, in proper cases, the servant may recover damages from the master where he is injured through the incompetency of a fellow servant, and the master knew and the servant did not know of such incompetency. 4 Thompson, Negligence, § 4048. The complaint does not show that the appellant was guilty of such negligence as will preclude a recovery.

"Where a servant is injured as the result of an act done by him under an impulse or on a belief created by a sudden danger caused solely by the master's negligence, he is not to be regarded as guilty of contributory negligence, even though the act would be regarded as a negligent one if performed under circumstances not indicating sudden peril. If, however, the emergency in which the servant acts is of his own making, the master cannot be held liable on the theory that it had by its negligence placed him in such a position as to relieve the servant of the duty of exercising ordinary care for his own safety.

"A servant is not guilty of contributory negligence where he is injured while attempting, in the face of imminent danger, to avert an accident or to save the lives of others, unless the attempt is made under circumstances constituting rashness in the judgment of prudent persons.

"Contributory negligence will not be imputed to a servant where he is injured while making a reasonable effort to save his master's property in an emergency, even though his own acts, in connection with others, occasioned the threatened danger, where his acts were not culpable." 26 Cyc. 1274-6.

See, also, Labatt, Master and Servant, §§ 360, 361; *Prophet*

*v. Kemper*, 95 Mo. App. 219, 68 S. W. 956; *Omaha etc. R. Co. v. Krayenbuhl*, 48 Neb. 553, 67 N. W. 447; *Schroeder v. Chicago & A. R. Co.*, 108 Mo. 322, 18 S. W. 1094, 18 L. R. A. 827; *Maryland Steel Co. v. Marney*, 88 Md. 482, 42 Atl. 60, 71 Am. St. 441, 42 L. R. A. 842; *Peyton v. Texas & Pac. R. Co.*, 41 La. Ann. 861, 6 South. 690, 17 Am. St. 430. The rule, where one acts in a sudden peril to save human life, is admirably stated in *Peyton v. Texas & Pac. R. Co.*, *supra*, as follows:

"When one risks his life, or places himself in a position of great danger, in an effort to save the life of another, or to protect another who is exposed to a sudden peril, or in danger of great bodily harm, it is held that such exposure and risk for such a purpose is not negligent. The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons."

The rule is not so liberal where one exposes himself to danger to protect property, especially where, as here, the property was of inconsiderable value. It seems to us that, in such a case, the conduct of the appellant as applied to his efforts to save the cross-cut saw should be measured by the standard of ordinary prudence; that is, by what the ordinarily prudent person similarly situated would have done. Labatt, Master and Servant, § 361.

We think, also, that the facts alleged in the complaint show that there was an implied duty upon the respondent to proceed with reasonable diligence to convey the appellant to the hospital. It is alleged, that a hospital fee was exacted and withheld; that the appellant was prostrated; that the respondent had a logging road with engines and equipment at hand for conveying the appellant to the hospital; that it knowingly left him lying prostrated for a period of twenty-four hours, and that his pain and suffering were augmented and his damages otherwise aggravated thereby. The rule of an implied liability to furnish free transportation to a

hospital, when hospital fees are withheld from the wages of the employee, has usually been applied to common carriers. But we think the same obligation arises from the facts alleged here. *Gulf etc. R. Co. v. Harney* (Tex. Civ. App.), 54 S. W. 791; *St. Louis Southwestern R. Co. v. Reagan*, 79 Ark. 484, 96 S. W. 168, 7 L. R. A. (N. S.) 997; *Illinois· Cent. R. Co. v. Gheen*, 112 Ky. 695, 66 S. W. 639, 68 S. W. 1087; *Louisville etc. R. Co. v. Spinks*, 104 Ga. 692, 30 S. E. 968.

But the respondent suggests that the appellant cannot recover the additional damages arising from a failure of the respondent to furnish transportation to the hospital, because when the respondent failed in the performance of that duty, it was the appellant's duty to make reasonable efforts to reach the hospital. This argument overlooks the averment in the complaint that the appellant was left lying prostrated in the woods. The reasonable inference from the complaint is that the appellant was so prostrated from the shock and from the injury that he was unable to care for himself. It is, of course, elementary that, when the appellant found that the respondent would not convey him to the hospital, it was his duty, if physically and mentally able, to make reasonable efforts to minimize the damages; that is, to get to the hospital or to otherwise secure medical assistance, and that if he failed to do so, or to the extent that he did not do so, there is no liability upon the respondent for the damages occasioned thereby. In other words, it was the appellant's duty to act as a man of ordinary prudence would have acted under the circumstances, and if he failed to do so, the respondent is not liable for the damages flowing from his own negligence.

The respondent next contends that two causes of action, the one sounding in tort and the other springing from contract, are united, and that it is not permissive under the code to unite a cause of action *ex delicto* with a cause of action *ex contractu*. A reference to *Louisville etc. R. Co. v. Spinks*, *supra*, where the various definitions of tort by the textwriters

are collected, will disclose that the differences in legal meaning between a tort and a contract are often extremely shadowy and indistinct. For instance, Mr. Bishop, in his work on Non-Contract Law, § 4, says:

"The word 'tort' means nearly the same thing as the expression 'civil wrong.' It denotes an injury inflicted otherwise than by a mere breach of contract; or, to be more nicely accurate, a tort is one's disturbance of another in rights which the law has created either in the absence of contract, or in consequence of a relation which a contract had established between the parties."

All the injuries complained of in the case at bar have their origin in contract. In the contract of employment there was an implied obligation upon the respondent to use reasonable efforts to surround the appellant with reasonably competent fellow servants. If the respondent knowingly employed an incompetent assistant, it breached its contract obligation. As we have seen, upon the facts pleaded there was also an implied contract obligation on the respondent to furnish the injured employee with transportation to its hospital. It is patent, therefore, that, in the larger sense, the entire cause of action springs from contractual relations.

Assuming, however, that the injury from the falling limb rests in tort, we think the causes of action may be joined under the 8th subdivision of the statute, Rem. & Bal. Code, § 296. It provides that the plaintiff may unite several causes of action in the same complaint, where they all arise out of the same transaction. Broadly speaking, there was here but one transaction. The appellant was employed to labor for the respondent. A part of his wages was exacted and withheld for hospital fees. He was injured while engaged in the performance of his duties, in consequence of the respondent's negligence, and it failed in its duty to use reasonable diligence to carry him to the hospital for medical treatment. A reference to the complaint will disclose that the wrongs alleged and the injuries sustained are so interwoven that they can-

not be heard in separate trials. The injuries, pain, and suffering arising from the broken arm, and those arising from the failure to treat the injury with reasonable promptness, cannot be separated without resorting to speculation and conjecture. Subdivision 8 is not susceptible of any other reasonable interpretation without limiting it to the cases enumerated in the preceding subdivisions, and it is patent that the law-makers intended no such limitation. In *Clark v. Great Northern R. Co.*, 31 Wash. 658, 72 Pac. 477, and kindred cases, this court has held that actions *ex delicto* and actions *ex contractu* cannot be joined, but the provisions of subdivision 8 of the statute were not there involved. Mr. Pomeroy, in his Code Remedies (3d ed.), § 463, says:

"If all the other requisites of the statute are complied with, legal causes of action of the most dissimilar character—for example, contract and tort—may be united in one proceeding, provided they all arise out of the same transaction, or out of transactions connected with the same subject of action."

See, also, Id., §§ 468, 469.

It is true that the causes of action are not separately stated; but where they are properly joined, that question can only be raised by a motion to require the pleader to separately state them. *Moore v. Brownfield,* 10 Wash. 439, 39 Pac. 113; *Richardson v. Carbon Hill Coal Co.*, 10 Wash. 648, 39 Pac. 95.

The judgment is reversed.

Dunbar, C. J., Fullerton, Mount, and Parker, JJ., concur.