[No. 14448. *En Banc.* February 19, 1918.]

# A. WELCH, *Appellant*, v. NORTHERN BANK & TRUST COMPANY, *Respondent*.[1]

ACTION—JOINDER—SAME TRANSACTION. A cause of action arising out of a breach of contract relating to the sale of bonds to the plaintiff, and a cause for false representations inducing the purchase, are properly united as arising out of the same transaction, where recovery was sought for nonperformance of or negligent disregard of the contract, resulting in fraud upon the purchaser of the bonds.

CORPORATIONS—TRUST DEED—CORPORATE BONDS—RIGHTS OF BOND-HOLDERS. Where the sale of corporate security is made through the mediumship of a trustee, he accepts an active trust, and his liability to purchasing bondholders must be measured by the terms of the trust deed securing the issue of the bonds, and does not attach merely from the time of the purchase of the bonds.

SAME. In such a case, the trustee is liable to the bondholders for negligence in failing to preserve the title to the property and retire a prior lien, where the deed contemplated that the bonds would be issued upon titles vested in the company, for the equal *pro rata* benefit of all the bondholders, who were to be secured by first lien, and that the existing liabilities would be retired by the bond issue, and further reserved the discretion of selling and handling the property, and provided that no bondholder should begin any suit for the foreclosure of his bond and that the trustee should receive reasonable compensation for all services rendered in execution of the trust.

Appeal from a judgment of the superior court for King county, French, J., entered March 23, 1917, upon granting a nonsuit, dismissing an action for damages. Reversed.

*Winfield R. Smith,* for appellant.

*M. M. Richardson* and *Hugh C. Todd* (*Samuel E. Kenney,* of counsel), for respondent.

CHADWICK, J.—Plaintiff brought this action to recover damages from the defendant for the loss of the

[1]Reported in 170 Pac. 1029.

value of certain bonds of the Lewis County Light & Power Company. The defendant was made the trustee of the light and power company by deed executed July 24, 1914.

Plaintiff set up his claim for damages in two causes of action. In his first cause of action he recites, that the Lewis County Light & Power Company was organized to take over the property and business of the Wilson Coal Company; that, to effect its purposes, it executed a trust deed purporting to convey to the defendant all of its real and personal property and franchises, together with any after-acquired property, it being the intention of the parties that the deed should be a first lien and security for an issue of $250,000 of negotiable bonds; that, prior to, and at the time of, the execution of the trust deed, the defendant was a holder of bonds of the Wilson Coal Company to the extent of $40,000, which bonds were secured by a trust deed; that, without taking any account of the property of the light and power company, and taking no pains to inform itself of the true condition of the property, the trustee furnished and certified bonds to the extent of $125,000, which were put upon the market by the light and power company; that the bonds, on their face, recite that they are secured by a first mortgage on all of the company's properties, including its coal mines, all contracts, equipment, franchises, lands, machinery, issues, incomes, profits, and all other property then owned, or to be thereafter acquired; that the mortgage had been duly filed and recorded; that plaintiff became a purchaser of bonds of the face value of $26,800; that it afterwards transpired that the defendant had from the first wholly neglected and disregarded its duties as trustee and had been grossly negligent, in that the trust deed had been drawn to cover both real and personal property and had not been filed as a chattel lien, and

did not cover all of the property that had been owned by the Wilson Coal Company; that a part of the property, which was of great value, was at the time under a ninety-nine year lease and not available to the light and power company in the performance of its functions as recited in the trust deed and bonds; that the defendant had procured no abstract of title, or had for itself made any investigation of the titles to the property which the deed purported to convey; that it accepted the casual statement of the company's attorney, who was a stockholder, officer, and a member of the board of trustees of the company, all of which defendant well knew; that, when the trust deed was executed and certified and the bonds delivered by the defendant to the company, the company had no title to any of the real estate described in the deed, and that its after-acquired titles to the real estate and its titles to its personal property were hopelessly involved and incumbered; that the consideration given by the light and power company for the after-acquired property was a block of the bonds issued under the trust deed, and that the vendors of the property are now claiming that the company obtained its title through fraud, and are still claiming the land and paying taxes thereon; that the general taxes on a large part of the property are due and unpaid since 1908; that the property is now charged with the prior mortgage of $40,000 held by this defendant, of which at least $25,000 is unpaid, with interest long overdue; that, at the time, there were judgment liens aggregating large amounts; and that 120 acres of the land covered by the trust deed was, and is now, covered by a mortgage to another trust company to secure an issue of bonds limited to the sum of $250,000.

It is further alleged, that the defendant was negligent in delivering the bonds to the company without

question or check and without retaining sufficient bonds to take up the indebtedness of $40,000, which, under the trust deed, it had engaged itself to do; that the trustee has failed to perform the obligations of its trust, in that the object of the transaction was to secure a fund of $125,000 to buy or build an electric generator system, to acquire additional real estate, rights of way, transmission lines and equipment, and that no part of the proceeds of the bonds were ever used for these purposes; that, on the contrary, the bonds were used by the company, with the acquiescence of the defendant, for the purchase of lands constituting part of the security of the mortgage itself, to discharge prior obligations of the company, and to meet current expenses and salaries.    Plaintiff further alleges that the securities described, if free and unincumbered, were ample to protect and satisfy the bonds.

For a second cause of action plaintiff alleged that he bought the bonds upon certain representations made by the trustee as to the standing of the light and power company, its prospects for future business, and the value of its securities.

The court below held upon motion, which, under the present state of the record, we will treat as a demurrer (*Bethel v. Robinson*, 4 Wash. 446, 30 Pac. 734; *Seal v. Cameron*, 24 Wash. 62, 63 Pac. 1103), that plaintiff had improperly joined two causes of action.   We seriously question the ruling of the court.   No subject of the law is more vexed than that of joinder of causes of action. The confusion arises out of the construction put upon the word "transaction" as it is found in the statutes permitting causes of action to be joined.   It has finally come to be said that it is impracticable to lay down a general rule which will serve as a guide for future cases, and that it is safer for the courts to pass upon

the question as each case is presented. 14 Standard
Ency. of Procedure, 701.

The theory of the court below was that the first cause
of action rested in breach of contract, whereas the sec-
ond cause of action was an action for fraud. We find
no case reported covering the exact state of facts
which the record presents, but the reasoning employed
by the court in *Harding v. Ostrander R. & Timber Co.,*
64 Wash. 224, 116 Pac. 635, would tend to negative the
holding of the trial judge. The wrong, as measured by
the recovery sought, is the same wrong. The pleader
did not couple a claim of damage to property with a
claim of damage to the person. He sought to recover
the same damage, and, if the common law procedure
prevailed, we would have no hesitation in saying that
he had alleged one cause of action in two counts.

In *Starwich v. Ernst, ante* p. 198, 170 Pac. 584, the
appellant conveyed a lot to respondents. There was a
two-story brick building on the lot, and it later de-
veloped that the building overlapped and projected
into the street. Respondents were ordered by the city
to remove the building from the street, which they did
by cutting the end back to the lot line.

We held that plaintiffs should not be put to an elec-
tion, saying:

"While the respondents sought but one recovery,
namely, the cost of the alteration of the building and
its lessened value by reason of the shortening, they di-
vided their complaint into two causes of action. In one,
they alleged a breach of the warranty contained in the
deed, and in the other, they alleged that the appellants
had falsely represented that the building was wholly
upon the lot conveyed.

"When the case was called for trial after issue
joined, the appellants moved that the respondents elect
upon which of the causes of action stated in the com-
plaint they would rely for a recovery. The motion

was denied by the trial court, and its action in so doing constitutes the first error assigned for reversal. But we think the action of the court without error. There was but one cause of action stated in the complaint, notwithstanding the pleader attempted to divide it into two. The ultimate object and purpose of the action was to recover for a loss which respondents had unwittingly suffered and for which they claimed the appellants were primarily liable. *That this liability arose through independent and separate acts of the appellants did not necessarily make each act a separate cause of action.* . . . Proofs may be admitted upon all of them, and a recovery may be had if any one or more are found to be proven. Any other rule would amount to a denial of justice. It would compel plaintiff to elect between different grounds of liability and, at his peril, pursue that one to the exclusion of the others. Such is not the rule in this jurisdiction, as we have several times announced.''

In that case there was a breach of warranty and a false representation. Here there was a negligent breach of contract and a false representation. This case is an even stronger one than the *Starwich* case, for here the first cause of action cannot be said to rest in contract at all. Appellant is not suing for a loss arising in or out of the performance of its contract, but for the nonperformance; the negligent disregard of the contract, resulting in a fraud upon the purchasers of the bonds. Both cases, if they be treated as such, are for a wrong; the one, if not a tort, at least sounds in tort; the other is in tort, as all parties agree.

Plaintiff being compelled so to do, elected to proceed under the first cause of action. He filed an amended complaint, which sets up the first cause of action, and probably the second cause of action as well, in one count.

The case went to trial, and when plaintiff had rested, the court entertained a motion for a nonsuit, and dis-

missed plaintiff out of court upon the theory that defendant owed no duty to plaintiff to investigate titles, or to inform itself in any way as to the character of the securities or the standing of the light and power company; the argument of respondent being, for the purposes of this appeal, that plaintiff was not a holder of the bonds at the time of the execution of the trust deed and, for that reason, can claim no protection, and that his right, if any, rests in fraudulent representations as to value, which right he has waived by his election.

Both parties rest their case upon a construction of the trust deed, the text of respondent's brief being that the liability of a trustee is measured by the trust deed. But the terms of a trust deed executed to sustain corporate securities do not depend upon the express terms of the deed alone. The implications which arise from the relation of the parties are as much a part of the deed as if they were written in it. So long as no active duty is demanded of the trustee, the trust is no more than nominal, but if, by the terms of the trust deed, the trustee engages to do something (hold property) for the benefit of those who buy bonds, the trust is from its inception an active trust as distinguished from a dry or passive trust.

"When trustees have accepted the office, they ought to bear in mind that the law knows no such person as a *passive trustee,* and that they cannot sleep upon their trust.

"The trustee should make himself acquainted with the nature and circumstances of the property; for though he is not responsible for anything that happens before his acceptance of the trust, yet if a loss occurs from any want of attention, care, or diligence in him after his acceptance, he may be held responsible for not taking such action as was called for." Perry, Trusts and Trustees, § 266.

The sale of corporate securities through the medium-ship of trust companies is a method of reaching the individual investor. Such securities are generally issued in large amounts, and because of the impracticability of disposing of them, or obtaining loans in single payments, the business world has resorted to the method of mortgaging properties and securities to a trustee company to be disposed of piecemeal to investors who are able to make small investments. Such transactions are made for the benefit of these future investors, and it would be against the policy of the law, as it would be against natural equity, to hold that the right of a bondholder attached at the time he pays his money for the bonds and not from the time the trust deed was made and the bonds issued and certified by the trust company.

Counsel contends that this would operate as a guaranty on the part of the trustee, when it is well known that the trustee companies act in these matters for a nominal fee. We may grant that it may so operate in some cases, but if a trust deed does not create a guaranty, the court will so declare. So that, from whatever angle we view the case, we come back to the proposition that the rights of the parties are to be gathered from the trust deed. When considering the trust deed and its implications, we are warranted in considering the relation of the trustee to the transaction.

"The salability of railroad bonds depends in no inconsiderable degree upon the character of the persons who are selected to manage the trust. If these persons are of well-known integrity and pecuniary ability the bonds are more readily sold than if this were not the case. It is natural that it should be so, and on this account the trustees usually appointed in this class of mortgages are persons of good reputation in the cities where these bonds are likely to sell." *Knapp v. Railroad Co.*, 20 Wall. 117.

Looking to the deed upon which the bond issue rests, we find that defendant assumed the obligations of an active trustee. The deed contemplates that the bonds will be issued upon titles vested in the light and power company for the "equal *pro rata* benefit and security of the holders of the bonds at whatever period the same may be issued;" that the purchasers of the bonds would have a first and *pro rata* lien upon the property, it engaged itself to retire the existing incumbrance of a previous bond issue of $40,000 by the Wilson Coal Company. It assumed the right to protect the property by insurance and to direct the use or investment of the insurance money in case of any loss. It reserved the right to demand at any time schedules showing, with all reasonable detail, the state of the property covered by the lien of the trust deed. It reserved a discretion as to the sale and substitution of properties. It reserved the right to require monthly statements showing all coal mined and shipped, and copies of books and records of the company relating to the production or selling of coal.

"It being one of the objects and intentions of this indenture to borrow money by means of bonds to be issued hereunder to retire a previous bond issue of $40,000 heretofore made by the Wilson Coal Company to Northern Bank & Trust Company as trustee."

Although a bondholder may not have a right to bring an action of foreclosure in his own name under the general rules of law—a question we are not called upon to decide—the trust deed provides that no holder of bonds shall have any right to begin any suit, or action in equity, for the foreclosure of his bonds. Whatever the right may be, this provision is entitled to be considered in determining the question whether the trust was an active or a passive one.

The defendant holds itself to an exemption from liability in selection of agents and employees, if it shall have exercised reasonable care in the selection of such persons. The deed does not provide for nominal compensation, but, on the contrary, it was drawn, as we believe, with the intent and purpose of declaring an active trust. The defendant contracted that it should receive reasonable compensation for all service rendered in the execution of the trust. In other words, that it should be paid the full value for its services.

We hold that appellant stated but one cause of action in the original as well as in the amended complaint, that he maintained his first cause of action, so-called, and that the court should have admitted evidence of fraudulent representations in the way of letters, if it be shown that appellant was induced to purchase bonds upon the strength of such letters.

Upon the general principles involved, we have consulted and accepted as controlling: *Rhinelander v. Farmers' Loan & Trust Co.*, 172 N. Y. 519, 65 N. E. 499; *Patterson v. Guardian Trust Co.*, 144 App. Div. 863, 129 N. Y. Supp. 807; 3 Pomeroy, Equity Jurisprudence (3d ed.), § 1070; Jones, Corporate Bonds & Mortgages, ch. 10; Short, Law of Railway Bonds, § 284 *et seq.*

Reversed, and remanded for further proceedings.

ELLIS, C. J., MOUNT, MAIN, HOLCOMB, FULLERTON, WEBSTER, and PARKER, JJ., concur.