[No. 18406. Department Two. May 9, 1924.]

COMMERCIAL WATERWAY DISTRICT No. 2 OF KING COUNTY, *Appellant,* v. RALPH D. NICHOLS et al., *Respondents.*[1]

CONTRACTS (66, 93)—PRINCIPAL AND SURETY (23)—CONSTRUCTION —INTENT OF PARTIES—TIME FOR PAYMENT—DISCHARGE OF SURETY— FAILURE TO GIVE NOTICE. Under a claim in a bond guaranteeing the performance of a contract, which required immediate written notice of any failure of the principal to make any payment or perform any act within the time required by the contract, the surety is discharged by the failure to give notice of default in monthly payments of five cents per cubic yard for every cubic yard removed, pursuant to the supplemental contract (which was covered by the bond) where, construing the terms of the original contract, which required payments to be made monthly, with the supplemental contract for five cents a yard, and in view of the circumstances, the subject-matter, and the object and purpose in view, together with the bond furnished, it must have been the intention to make monthly payments under the supplemental contract.

[1]Reported in 225 Pac. 652.

Appeal from a judgment of the superior court for King county, Smith, J., entered November 20, 1923, upon sustaining a demurrer to the complaint, dismissing an action on contract. Affirmed.

*Edward Judd,* for appellant.

*Tom Alderson,* for respondent.

MITCHELL, J.—A general demurrer on behalf of the surety company to the amended complaint in this action was sustained. By agreement the case was dismissed as to the defendant Ralph D. Nichols. The plaintiff elected to stand on its amended complaint and has appealed from the judgment dismissing the action as to the surety company.

In effect, the amended complaint alleges that, on June 18, 1919, the Commercial Waterway District No. 2, as party of the first part, entered into a ten-year contract with Ralph D. Nichols, as party of the second part, allowing him to remove sand and gravel from the channel of the waterway owned and controlled by the waterway district, as far up the channel or stream as Logan street bridge, over Cedar river, in the city of Renton. By the terms of the contract, "party of the second part is to pay party of the first part *monthly* one-half of the net profits" from the sale of sand and gravel, guaranteed to "net party of the first part at least six hundred dollars ($600.00) per year." The contract further provided: "Party of the second part shall make *monthly* reports on or before the 15th day of each and every month, during the term of the contract, to party of the first part showing the entire amount of material removed from the waterway, where stored, and the entire amount sold, together with check, etc." The contract further provided that the second party shall give a surety bond in the sum of $2,000 for

the faithful performance of his agreement, to the first party.

It is alleged that, in March, 1920, the waterway district and Nichols entered into an additional or supplemental contract, making some changes in the original contract and extending the area to be dredged, as follows:

"That the following shall be attached to and become a part of the contract between said parties made the 18th day of June, 1919, to-wit: The east boundary of the said Waterway bed from which said Ralph D. Nichols has the right to take sand and gravel under said contract is extended from Logan Street to Mill Street— And in consideration of such extension in addition to the other agreements, on his part, to be performed, said Ralph D. Nichols guarantees to said Waterway District five cents per cubic yard for each and every cubic yard of sand and gravel removed, under said contracts and agreements. A semi-monthly (twice each month) receipted pay roll to be furnished the Waterway Commissioner by Ralph D. Nichols. All other of the provisions of original contract to apply to the whole thereof from Lake Washington to Mill Street Bridge. Witness our hands and seals this 15th day of March, 1920."

The amended complaint alleges that the bond was given and that, by its terms, it was intended to and did cover both the original and supplemental contracts between the waterway district and Nichols. The bond is the one in suit and it is set out in full as a part of the pleading. It refers to the original contract and also the later one extending the area of operations, in consideration of which extension it recites that Nichols guarantees the waterway district five cents per cubic yard for sand and gravel removed, and that a semi-monthly receipted pay roll of all employees shall be furnished to the waterway commissioners by Ralph D. Nichols. It provides that the principal shall faithfully

perform all the provisions of his contracts and agreements and, in effect, that the obligation is limited by express conditions, therein enumerated, the performance of each of which shall be a condition precedent to any right of claim or recovery under the bond, one of which conditions is that the obligee shall give the surety company *immediate* written notice of any failure of the principal to make any payment or perform any act required by the contract on the date required by it. Or, as tersely stated by the appellant in its brief, "the essential portion of the limitation is that, 'failure of the principal to make any payment or perform any act as required by the contracts herein referred to on the date said payment became due or such act should be performed,' shall, if notice is not given, exonerate the surety."

The pleading further alleges that, on February 1, 1923, the surety company gave the waterway district written notice of election to terminate its liability under the bond for any and all defaults covered by the bond occurring after thirty days from that date, as it had reserved the right to do by the express terms of the bond; and it is further alleged that, between the making of the dredging contracts and February 1, 1923, the date of the notice from the surety company, Nichols removed from the channel ninety thousand cubic yards of sand and gravel, which, under the terms of the contract at five cents per cubic yard, amounted to $4,500 that became due and owing to the waterway district, none of which had been paid, and for which judgment was demanded against the principal and the surety on the bond.

This action was commenced on November 10, 1923, more than eight months after both the removal of the sand and gravel and the notice given by the surety company terminating its liability, and there is no al-

legation in the amended complaint of lack of knowledge on the part of the waterway district of the defaults of Nichols in the making of payments at the time those defaults occurred, nor any allegation of giving any written notice to the surety company of the defaults and omissions of the principal to make payments as required by the contracts, the giving of which written notice is, by the terms of the bond, as already noticed, made a limitation upon and condition precedent to the right of the obligee in the bond to claim a right to recover thereunder.

The appellant says that the only question on the appeal is whether or not the giving of the written notice of the failure of the principal to make payments was a condition precedent to the existence of the cause of action against the surety. In presenting the question attention is called by the appellant to the provision in the original contract that one-half of the net profits were to be paid by Nichols to the district on the *15th of each month,* while the supplemental contract says that, "in addition to other agreements," Nichols is to pay "five cents per cubic yard for each and every cubic yard of sand and gravel removed under said contracts and agreements," and therefrom it is contended that there is not a word as to *when* the extra five cents is payable; that the taking of sand and gravel was to be a continuing act throughout the life of the contract, that is, for ten years, or, as in this case, until its termination by notice given by the surety company; and that the amount that would become due could not be known until the contract was terminated, and would not be due until that time. As we understand, the argument, more particularly, is that the five cents per cubic yard is in addition to the price fixed in the original contract of not less than $50 per month, or a guaranty of $600 per year, and is in no way controlled by

the provision in the first contract calling for monthly payments. The argument would be more plausible if instead of the language "in addition to other *agreements*," found in the supplemental contract, it had been written "in addition to other *compensation*." If two sets of prices or compensation were still assured to the appellant, it would be rather unusual in a suit on the bond, which by its terms and the allegations of the complaint covered both contracts, for the plaintiff to seek to recover one price and omit the other.

It would appear that the complaint is grounded on that construction of the two contracts by which the price of five cents per cubic yard mentioned in the later addition to the contract superseded the price mentioned in the first one, thus leaving the provision for monthly payments mentioned in the first one still in force. But independent of appellant's course in framing its pleading, such we think is a proper understanding of the two instruments, which by their terms are made to constitute but one contract. And still further, whether the one supersedes the other in this respect or not, the result is the same. Certainly there is no inconsistency in the two instruments, now made one contract, to say that the parties intended that the five cents per cubic yard should be paid monthly. Monthly payments are called for clearly in the first contract and, of course, therein embrace the only kind of payment that contract called for, but by a common rule of construction must be held to apply to the kind of payment mentioned in the later contract, not inconsistent with it, because by such later addition to the contract it was agreed that "all other of the provisions of the original contract to apply, etc.", which, of course, includes the one that "party of the second part shall make monthly reports . . . together with check, etc."

In the case of *Dyer v. Middle Kittitas Irrigation Dist.*, 25 Wash. 80, 64 Pac. 1009, this court said:

"It is a familiar rule that contracts will be given that construction which will best effectuate the intention of the parties, and that this intention must be collected, not from detached portions of the contract but from the contract as a whole. The court will, also, in determining the intention of the parties, look to the circumstances under which the contract was made, the subject-matter and the objects and purposes for which it was made."

Looking to the circumstances under which the contract was made, the subject-matter and the object and purposes for which it was made, together with the bond furnished in connection therewith, counsel for the respondent has pertinently called attention to the comparative insignificance of the amount of the bond, conditioned for the faithful performance of all the obligations of the principal, including payments for sand and gravel moved at five cents per cubic yard, if intended to cover the whole period of ten years, since the first contract contained a total guarantee of compensation to the district of not less than $6,000, while under the terms of the amendment to the contract, $4,500 accrued in favor of the appellant, as alleged in its pleading, within a period of less than two years.

The demurrer to the amended complaint was properly sustained, in our opinion.

Judgment affirmed.

MAIN, C. J., FULLERTON, and BRIDGES, JJ., concur.