[No. 22410. Department One. January 22, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. J. I. STERETT, *Appellant*.[1]

*W. W. Zent* and *Powell & Herman,* for appellant.
*Joseph H. Johnston,* for respondent.

PARKER, J.—The defendant, Sterett, was, by information filed in the superior court for Lincoln county, charged with the crime of embezzling, in that county, on or about August 16, 1928, the sum of fifty dollars belonging to Sidney Horn. A trial in that court, sitting with a jury, resulted in a verdict finding Sterett guilty and a judgment rendered thereon against him, from which he has appealed to this court.

[1]Reported in 295 Pac. 182.

In July, 1928, Sidney Horn, a man of about sixty years of age, came to the farm of the defendant, Sterett, in Lincoln county, and commenced working for him as a farm hand. Horn brought there his team of horses, wagon, and camping outfit. After working for Sterett some two weeks, Horn became sick, and then went to a hospital in Spokane, about August 5, 1928, for care and treatment. Spokane is some fifty miles distant from the Sterett farm. Horn had a wife and two children, Cecil Horn and Mrs. A. W. Swaney, living in Spokane.

Horn left his team and other property in care of Sterett, and authorized Sterett to sell the team and keep all he could get for it over fifty dollars, and to keep the fifty dollars until, he, Horn, came back. There was no understanding as to any disposition of Horn's other property. Nor was there any settlement then made for the wages due Horn; it evidently being the intent of both parties that such settlement should, also, await Horn's return.

On August 16th, while Horn was at the hospital, Sterett traded Horn's horses to F. G. Magin, a farmer, living some four miles distant from Sterett's place. In that trade, Sterett received, for Horn's horses, Magin's check for seventy-five dollars on the Lincoln County State Bank, and two other horses of apparently small value. Soon thereafter, Sterett received the proceeds of the check and thus became the holder for Horn of the sum of fifty dollars.

Thereafter, on August 24, 1928, Horn died while at the hospital in Spokane. Sterett learned of Horn's death soon thereafter. The horses have been, at all times since acquiring them by Magin, alive and in his possession, up to the time of the trial of this case in November, 1929.

Soon after Sterett learned of Horn's death, Magin met him, when, according to Magin's testimony, the following conversation occurred between them:

"I was coming in from my home and there was a wreck—a Ford car in the ditch and I saw Mr. Sterett— I called to him to wait a minute and I got out and went back to Mr. Sterett and asked him how Mr. Horn was and he said the old gentleman was dead—and I said 'what did he think about the deal—was it all right?' and he says 'absolutely all right,' and I said 'did you give him that check?' and he says 'I did,' and I says 'very well' . . ."

Sterett did not see Horn at any time after he went to Spokane, and had not given Horn the check or the fifty dollars. Thereafter, in September, 1928, Mr. and Mrs. A. W. Swaney, Horn's son-in-law and daughter, went to Sterett's place and talked to him; this, with a view of ascertaining what property Horn had left there. Mr. Swaney testified with reference to conversation he then had with Sterett as follows:

"We went down there to settle up my father-in-law's affairs after he died. . . . The subject of disposing of the team was brought up and Mr. Sterett said he had sold the team to a man over by Harrington. Sterett said he was afraid the man at Harrington would not pay for the team and he would have to repossess it, and I told him if we did repossess the team I would like him to keep them through the winter, and he said he would put them on pasture there and let them run with his horses."

Mrs. Swaney, Horn's daughter, testified to having heard this conversation between her husband and Sterett. At that time, there was some discussion about the wages due from Sterett to Horn. It was then tentatively agreed that there was twenty-eight dollars due, and that sum was later paid by Sterett to Horn's widow. In March, 1929, Mr. Swaney had made

further inquiry about Horn's horses and Sterett's disposition of them, when he discovered Sterett had disposed of them to Magin, instead of to someone over by Harrington, many miles distant from Magin's place. Being so informed, he went, with Horn's son, Cecil Horn, to see Sterett and make further inquiry with reference to the horses and their disposition. Swaney testified as to what then occurred as follows:

"Q. What conversation did you have with Sterett when you went out there  A. I went out with Mr. Cecil Horn and we talked in the house awhile; then Sterett said the team had died.  Q. What team did he refer to?  A. Mr. Horn's team.  Q. Did he say anything about having taken the team back from Harrington?  A. He said he had to take them back, the man did not pay for them.  Q. Then what did he do, if anything?  A. He said he would take us out and show us the team. Then after talking in the house awhile we went out in the barn—then he took us over the hill to where he showed us a dead horse.  Q. Did you know the team of Mr. Horn's at that time?  A. I did.  Q. Was there any difference between his team and the dead horse you looked at?  A. Well, the dead horse looked quite a little lighter in color.  Q. At that time had you already seen Mr. Horn's team somewhere?  A. I did. Q. You knew then when you were shown this dead horse, where Mr. Horn's team was?  A. I did.  Q. Who was present when you looked at the dead horse?  A. Mr. Horn [meaning the son]."

The son confirms this testimony of the son-in-law, Swaney, as to this conversation had with Sterett. When Sterett made the bargain by which he received the seventy-five dollar check as part consideration for Horn's horses, he asked of Magin that he receive that sum in cash.  Magin, not having that much money with him, insisted on giving him a check, which Sterett, evidently, reluctantly received, but saying to Magin: "You write it to me and I will take it up tomorrow;" having previously said: "Give me the cash; I want

to take it to him in the morning.'' Sterett never paid any portion of the fifty dollars to Horn, or to his widow, or heirs, or to anyone else. This, he was probably not, in a strict legal sense, required to do, since neither of them, nor anyone else, has been appointed administrator of Horn's estate. But it is apparent that Sterett not only failed to account for the fifty dollars to Horn or to his estate, but at all times secreted his possession of it, as much as was within his power. So, Horn's widow and children had no occasion, until the spring of 1929, to suspect that Sterett had received the fifty dollars in the disposition of the horses.

Sterett was charged with the embezzlement of the fifty dollars by secreting and appropriating it to his own use, and was arrested upon that charge in the latter part of March, or early in April, 1929. When Sterett was, soon thereafter, arrested by two deputy sheriffs, according to their testimony he told them that the horses were dead. A new charge, in the form of an amended information, was filed against him in October, 1929, upon which he was tried and found guilty by the verdict of a jury, returned November 19, 1929, upon which the final judgment against him was rendered, which is here sought to be reversed.

The principal contention here made in behalf of Sterett, seems to be that the evidence is insufficient to sustain the verdict and judgment rendered against him, and that the trial judge should have so decided, as a matter of law, in response to timely motions made in that behalf. The argument, as we understand counsel, is, in substance, that, since no demand was ever made upon Sterett for the fifty dollars by Horn, or any duly appointed administrator of Horn's estate, Sterett cannot be held guilty of feloniously appropriating the fifty dollars to his own use. The applicable

provisions of our larceny by embezzlement statute, found in Rem. Comp. Stat., § 2601, read as follows:

"Every person who, with intent to deprive or defraud the owner thereof . . .

"(3) Having any property in his possession, custody or control, as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation or as a public officer, or a person authorized by agreement or by competent authority to take or hold such possession, custody or control, or as a finder thereof, shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto;

. . . "Steals such property and shall be guilty of larceny."

Neither this nor any other statute of this state, that we are aware of, makes demand upon, and refusal or neglect to account by, one so accused, a necessary prerequisite to establishing his guilt. There are, it may be conceded, some statutes, and even some conditions in the absence of statute, under which proof of demand, and neglect or refusal to account, becomes necessary to establish such guilt. In the text of 20 C. J. 429, the general rule is well stated as follows:

"In the absence of statute to the contrary, where a fraudulent conversion is otherwise established, a demand for the money or other property alleged to have been embezzled is not necessary."

This statement is well supported by numerous dicisions of the courts, there cited. See, also, 9 R. C. L. 1276. It seems to us that proof of demand upon the accused and his failure to respond thereto, by paying the money or delivering the property to the one for whom it is held by him, is but one class of proof tending to show his guilt; and that, while such proof is necessary under some statutes, and under some condi-

tions even in the absence of statutes so requiring, demand is not indispensable proof to show such guilt, when there is other convincing proof, so showing. In *People v. Crane,* 34 Cal. App. 599, 168 Pac. 377, the court made this very pertinent observation:

"The contention that no embezzlement of the money could take place without a demand by the owner for its return having been previously made upon the defendant is untenable. A demand for the return of property or money intrusted to a bailee or trustee, followed by a refusal to return the property or money, is not itself an element of the crime of embezzlement, but constitutes mere evidence of embezzlement. It is true that a demand, followed by a refusal, is sometimes indispensable evidence of embezzlement; but it is the fraudulent and felonious conversion of the money or other property that constitutes the offense, and that may often be proved without a demand."

citing a number of prior California decisions. In the text of 2 Wharton's Criminal Law (11th ed.), § 1277, we read:

"The fraudulent appropriation is to be inferred from facts, among which is the denial of the reception or the suppression of the fact of such reception."

It is to be noted, in this connection, that our statute is very broad and inclusive in its terms, in that a person having in his possession property of another, who

". . . shall *secrete, withhold* or *appropriate* the same to his own use or to the use of any person other than the true owner or person entitled thereto, . . . shall be guilty of larceny." (Italics ours.) Rem. Comp. Stat., § 2601.

Clearly, this makes secretion, at least, a very important evidentiary fact, tending to show larceny by embezzlement. We are of the opinion that Sterett's false representations to the children of Horn, lulling them into the belief that he did not hold any money coming into his hands as the result of his disposition

of Horn's horses, in connection with other proved facts, was sufficient to warrant the jury in believing Sterett guilty of having feloniously appropriated the fifty dollars to his own use, and that, therefore, no demand was necessary to be made by Horn's widow, his children, or anyone else. It may not have been Sterett's strict legal duty to pay the fifty dollars to Horn's widow or children, since neither of them was administrator of his estate; but, in view of their rights in Horn's estate, it clearly was Sterett's legal, as well as his moral, duty to refrain from making false statements to them, in effect secreting from them the fact that he had received fifty dollars as the result of his disposition of Horn's horses.

It is further contended that there is no sufficient proof of Sterett's appropriation of the fifty dollars prior to Horn's death, and that there must be such proof in order to sustain the verdict and judgment, in view of the charge in the information being, in terms, that Sterett did

". . . feloniously secrete, withhold and appropriate the said sum of $50 to his own use with the intent of the said defendant to deprive and defraud the owner, the said Sidney Horn, of the same."

It is true that, if Sterett formed the intent to appropriate, and did actually appropriate, the fifty dollars after Horn died, Sterett did not, in a strict legal sense, appropriate Horn's fifty dollars. But, even so, he did appropriate, as the jury was fully warranted in finding under the evidence, the sum of fifty dollars belonging either to Horn or to Horn's estate, which, for present purposes, we think, should be held to be the same ownership. Under such circumstances, we think the prosecution was not required to prove the exact time of Sterett's appropriation of the fifty dollars, any more than as if Horn had not died, and the

false representations had been made to Horn, as they were made to his children, relating to the disposition of the horses. In Rem. Comp. Stat., § 2061, relating to criminal procedure, we read:

"When the crime involves the commission of or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material."

In *State v. Kruger,* 145 Wash. 654, 261 Pac. 383, we said:

"It has long been held that it is not necessary for the state to identify stolen property as belonging to any specified individual."

We conclude that the verdict is supported by the evidence, whether we regard the verdict as a finding of Sterett's committing the crime charged against him prior or subsequent to Horn's death.

It is further contended in behalf of Sterett that he is, in any event, entitled to a new trial, because of error committed to his prejudice during the trial. The principal claim of error made in that behalf, seems to be that the court erroneously instructed the jury, giving it to understand that proof of the exact time of the commission of the charged offense was not necessary to a conviction, except that the evidence must warrant a finding that the crime was committed at some time between the time Sterett received the fifty dollars upon his disposition of the horses, and the time of the filing of the information against him; thus informing the jury that proof of the commission of the crime after Horn's death would warrant Sterett's conviction, as well as proof of the commission of the crime prior to Horn's death. Section 2060, Rem. Comp. Stat., reads as follows:

"The precise time at which the crime was committed need not be stated in the indictment or information; but it may be alleged to have been committed at any time before the finding of the indictment or the filing of the information, and within the time in which an action may be commenced therefor, except where the time is a material ingredient in the crime."

Plainly, it seems to us that in the crime of larceny by embezzlement, as here charged, the time of the commission of the charged offense is not an "ingredient of the crime." We are of the opinion that the prosecution was not required to allege, or prove, the exact time at which Sterett appropriated the fifty dollars he acquired in the disposition of Horn's horses. It is enough that the proof showed, as the jury might well believe, and did believe, such appropriation occurred at some time between the receiving of the fifty dollars by Sterett and his false representations made to the children of Horn, relative to the manner of his disposition of the horses. We conclude that there was no error, prejudicial to the rights of Sterett, in the court's submitting the case to the jury upon this theory.

Some other contentions are made in behalf of Sterett, which we have examined with care, but with reference to which, we deem it sufficient to say that they are not of such substantial merit as to call for further discussion here.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, MAIN, and HOLCOMB, JJ., concur.