[No. 24718. Department One. January 24, 1934.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM D. COMER, *Appellant*.[1]

[1]Reported in 28 P. (2d) 1027.

258

*Colvin & Rhodes* and *Padden & Moriarty (Ralph Franklin,* of counsel), for appellant.

*Robert M. Burgunder, Emmett G. Lenihan,* and *Roscoe R. Fullerton,* for respondent.

MAIN, J.—William D. Comer and F. F. Powell were charged, by information which contained twenty counts, with the crime of grand larceny. The first ten counts charge larceny by embezzlement; the second ten charge larceny by aid of false and fraudulent representations. To the information, the defendants demurred, and also moved that the state be required to elect upon which group of charges the case would be tried. The demurrer was overruled, and the motion to elect was denied. The defendants moved for a change of venue on the ground of local prejudice, and also for a continuance, both of which motions were denied.

The trial resulted in a verdict of not guilty as to the defendant Powell upon all twenty of the counts. As to the defendant Comer, the verdict was not guilty upon the second ten counts and guilty upon each of the first ten. A motion in arrest of judgment and, in the alternative, for a new trial being interposed and overruled, judgment and sentence were entered, from which the defendant William D. Comer appeals.

The facts essential to be stated are these: W. D. Comer & Company was a corporation with its principal place of business in the city of Seattle. William D. Comer was its president, majority stockholder and directing officer. The corporation, beginning with the year about 1891 up until it became insolvent in the year 1931, was engaged in the business of buying and

selling bonds. Over this period, it bought and sold a large number of bond issues, ranging in amount from $200,000 to $650,000. The plan of operation, generally stated, was something like this:

W. D. Comer & Company would purchase outright an entire bond issue for the face value thereof, less ten per cent, and then sell the bonds to the bond-buying public at their face value. To secure the bonds, a trust deed, or trust mortgage as it is sometimes called, was given by the property owner. In the trust deed, William D. Comer, in each instance, was named as trustee and W. D. Comer & Company as depositary. The bonds carried interest coupons which were due every six months, and the principal of the bonds became due annually. The mortgagors, under the trust deed, were required to pay in monthly one-twelfth of the annual interest, one-twelfth of the principal coming due at the next annual due date, and a sum for the income tax. When the payments were made upon the various bond issues by the mortgagors, the monies were deposited in the bank in the general account of W. D. Comer & Company, into which went all the monies received by that company from any source. The obligations of W. D. Comer & Company of every nature and description were paid by checks drawn upon this general account.

When W. D. Comer & Company became insolvent in 1931, there was not sufficient money in the fund to meet the amounts due upon the bond issues. Each of the accounts in this case was based upon a separate issue, and the total amount of shortage, as indicated in the ten counts, was approximately $85,000. W. D. Comer & Company did not at any time keep the monies paid in on the various bond issues in a separate or a distinct trust account in the bank. The bonds which were issued contained a provision that the trust deed and the

bonds shall be taken and considered as part of one and the same contract. Each of the trust deeds, by express language, created a trust, and, as we view it, the only substantial question upon the appeal is whether the trust character of the instrument was overcome and destroyed by a clause which provided that in no event should the depositary be held to any greater or other accountability than that of a simple debtor.

The indenture covers sixty-three typewritten pages, and, owing to its length, it is impossible here to set it out in full. Reference will be made to some of its provisions. In each trust deed, after the words of conveyance, it is declared, covenanted and agreed that the premises were conveyed to, and to be held and disposed of by, William D. Comer "as trustee," subject to the covenants and provisions, "uses and trusts" of the instrument. Article 2 of the trust deed provides that, on the first day of each month, the mortgagor will deposit with W. D. Comer & Company a sum of money which will be equal to one-twelfth of the total of the annual charges and one-twelfth of the annual principal. It provides that the aggregate deposits, thirty days before the date of each annual principal payment, shall be sufficient to meet such principal payment, and provides for a sum to be paid to take care of the income tax. It is provided that, when the aggregates of the deposits for principal and interest and income tax payments have been received by W. D. Comer & Company

" . . . the liability of the mortgagors to pay the principal, interest or premium covered by said aggregate deposits for principal and interest and income taxes received by said W. D. Comer & Co. and said redemption deposits, respectively, shall to the extent of said deposits, respectively, be discharged and the holders of the bonds or coupons intended to be covered by said deposits agree to look for payment thereof solely to said W. D. Comer & Co. and shall, to the ex-

tent aforesaid, cease to be entitled to any benefit whatsoever under this Indenture on account of said bonds or coupons or both, respectively, but the money so deposited shall be applied by said W. D. Comer & Co. when received by it, to the payment of said bonds or coupons or both when due.''

In the same article, it is provided that any depositary may deposit any and all funds which may at any time be received by it, under any of the provisions of the trust deed, in such bank or banks as it may,

''. . . in its reasonable discretion, select, and no depositary shall be required to hold any deposits in specie or currency, or as trust funds, or to deposit any or all of such funds in separate or special accounts, in such bank or banks, but such funds may be mingled with other funds, and in no event shall the depositary be held to any greater or other accountability than that of a simple debtor.''

In Article 12 of the trust deed, which is next to the last article therein, it is provided that:

''Any Trustee ceasing to act shall, however, on the written request of the mortgagors or the new trustee, execute and deliver an instrument transferring to such new trustee, upon the trusts herein expressed, all the estates, properties, rights, powers and duties of the trustee so ceasing to act, and shall duly assign, transfer and deliver all property and moneys held by such Trustee to his or its successor.''

In the deeds, the monies paid in by the mortgagors are repeatedly referred to as having been ''deposited'' or as ''deposits.''

The question then is, to restate it, whether the exculpatory language in the immunity clause, which provides that ''in no event shall the depositary be held to any greater or other accountability than that of a simple debtor,'' overcame the trust provisions of the deed created by express language. Aside from this

one immunity clause, the instrument, from its beginning to end, carries the idea of a trust, and if the immunity clause is to be given the effect which is claimed for it, we see no reason why such elaborate provisions for the creation and carrying out of a trust would be necessary. It will be admitted, of course, that, the bonds having referred to the trust deed and being made a part thereof, the bondholders were bound by the provisions of the instrument.

It is a familiar rule that contracts will be given a construction which will best effectuate the intention of the parties, and this intention must be collected, not from detached portions of the contract, but from the contract as a whole. The court will also, in determining the intention of the parties, look to the circumstances under which the contract was made, the subject matter and the objects and purposes for which it was made. *Dyer v. Middle Kittitas Irrigation District,* 25 Wash. 80, 64 Pac. 1009; *Commercial Waterway District No. 2 v. Nichols,* 129 Wash. 598, 225 Pac. 652.

The general purpose and design of a contract will not be permitted to be frustrated by allowing too much force to be given to single words or clauses. *Tacoma Mill Co. v. Northern Pac. R. Co.,* 89 Wash. 187, 154 Pac. 173. Trust deeds executed to sustain corporate securities do not depend upon the express terms of the deed alone. The implications which arise from the relations of the parties are as much a part of the deed as if they were written into it. *Welch v. Northern Bank & Trust Co.,* 100 Wash. 349, 170 Pac. 1029. The commingling of trust funds with other funds does not destroy their character as trust funds. *Carlson v. Kies,* 75 Wash. 171, 134 Pac. 808, 47 L. R. A. (N. S.) 317; *Chase & Baker Co. v. Olmsted,* 93 Wash. 306, 160 Pac. 952; *State ex rel. Titlow v. Centralia,* 93 Wash. 401, 161 Pac. 74.

If the immunity clause is to prevail, then, under the provisions of the trust deed which exonerated the mortgagors from further liability as the payments were made, the bondholders would be substituting, as the payments came in, their security, provided for in the trust deed, for merely a credit account with W. D. Comer & Company. In other words, if two or more hundred thousand dollars were paid in before a particular due date, the mortgagors would be relieved to this extent, and the bondholders would be required to look only to W. D. Comer & Company.

Nowhere in the trust deed was W. D. Comer & Company authorized to use the trust funds at any time. It is true, as pointed out, that they were authorized to commingle them, but this did not disturb their trust character. When all of the provisions of the deed are considered, and its purposes and the relation of the parties, it may be that a proper construction would be that the immunity clause was intended only to apply in case the corpus of the trust was impaired without any fault on the part of the trustee or depositary. The appellant, however, takes the position that the immunity clause, by the plain and ordinary language used therein, must be given the effect of creating simply the relation of debtor and creditor between W. D. Comer & Company and the bondholders, and we shall consider the question upon that basis.

If this clause be given this effect, as already indicated, it would destroy the entire structure and character of the trust deed. The deed in no place giving W. D. Comer & Company the right to use the trust funds, it necessarily follows that their use for any purpose other than that specified in the trust deed was wrongful. Courts will not give to an immunity clause in a trust deed which secures a bond issue the effect

of destroying the character of the instrument in its scope and purpose.

In *Digney v. Blanchard,* 226 Mass. 335, 115 N. E. 424, it was said:

"And Blanchard is not exonerated from liability by section 14 of the declaration of trust, which provides that the trustee shall be liable only 'for the result of his own gross negligence or bad faith.' Whatever may be the extent of the liability of a trustee justifying under this clause, we do not construe it as affording him protection from a wilful and intentional breach of trust, committed by acting plainly beyond his powers. [Citing authorities.]"

In *Walker v. Howell,* 209 Iowa 823, 226 N. W. 85, with reference to an immunity clause which provided that the officers or directors of a corporation were "expressly released," it was said:

"Plainly, it was not intended by that stipulation to protect corporate officers in the commission of conversion or other willful wrongs. Business integrity and the honest execution of trusts make impossible the interpretation demanded by appellees."

The cases of *Industrial & General Trust, Ltd. v. Tod,* 180 N. Y. 215, 73 N. E. 7, and *Richardson v. Union Mortgage Co.,* 210 Iowa 346, 228 N. W. 103, as well as others that might be cited, are to the same effect.

We hold that the proper construction of the trust deed is that the immunity clause does not destroy the trust created by the deed, and that the funds which were used by W. D. Comer & Company for other purposes than that for which they were paid in by the mortgagors and upon which the counts in the information in this case were based, were trust funds.

There is much argument in the briefs which is based upon the assumption that the relation between W. D. Comer & Company and the bondholders was merely that of a debtor and creditor, but, since we have not

accepted that view of the contract, there is no occasion here to consider the argument upon any of the questions which are based upon the assumption that that was the relation which existed. There are, however, a number of other questions presented to which we shall give consideration.

■ It is contended that no crime was committed by appellant because no demand had been made upon him for the replacement of the funds. In Rem. Rev. Stat., § 2601, it is provided that every person who with intent to deprive or defraud the owner thereof, having in his possession, custody or control property as trustee, and who shall appropriate the same to his own use or to the use of any other person, shall be guilty of larceny. There is no provision in the statute requiring demand as a prerequisite to criminal liability. In the case of *State v. Sterett,* 160 Wash. 439, 295 Pac. 182, it was expressly held that a demand was not necessary as a prerequisite to establishing the guilt of the accused.

■ It is contended that the court erred in instructing the jury as to the meaning of the contract. The court instructed the jury that, as a matter of law, the monies held by W. D. Comer & Company, under the first ten counts of the information, were trust funds, and left it to the jury to say whether the monies were appropriated openly and avowedly under a claim of right or title made in good faith. The question of whether, by reason of the terms of the deed, the funds appropriated were trust funds, was a question for the court to determine. The interpretation to be given written instruments, whether the procedure be civil or criminal, is a matter of law for the court, and not a question of fact for the jury. *State v. Fox,* 71 Wash. 185, 127 Pac. 1111; *State v. Richards,* 97 Wash. 587, 167 Pac. 47. The instruction of the court was correct.

The case of *Spokane v. Dale,* 112 Wash. 533, 192 Pac. 921, is not out of harmony with those cited. In that case, the instruction complained of went beyond the defining of a particular word in a city ordinance, and assumed that the article transported was intoxicating liquor, and that also a suitcase contained intoxicating liquor. It was not the definition of the word in the ordinance that was held to be error, but the two assumptions of fact in that case.

It is contended that the appellant's motion for change of venue should have been granted. This motion, as indicated, was based upon the ground of local prejudice. A motion for change of venue, by the express provisions of the statute (Rem. Rev. Stat., §§ 2018-2019), is a question vested, in the first instance, in the discretion of the trial court, and we review the ruling of that court "only for gross abuse." *State v. Mahoney,* 120 Wash. 633, 208 Pac. 37; *State v. Lindberg,* 125 Wash. 51, 215 Pac. 41.

The appellant relies specially upon *State v. Hillman,* 42 Wash. 615, 85 Pac. 63, but in that case the affidavits supporting local prejudice were not controverted, and for this reason, as stated in the opinion, "we must accept the statements therein, so far as they are consistent with themselves, as the truth."

In the later case of *State v. Welty,* 65 Wash. 244, 118 Pac. 9, referring to the *Hillman* case, it was pointed out that, in that case, there was no contrary showing on the part of the state, and for this reason it was error to fail to give effect to uncontroverted facts.

In the case now before us, there are a large number of affidavits filed by the appellant supporting his claim of local prejudice. There are a large number of affidavits filed by the state which controvert those filed by the appellant. Upon the trial of the case, but thirty-one jurors were called into the box before twelve

were finally selected. Eight jurors were excused for cause. Had there been such local prejudice as indicated by the appellant's affidavits, it would seem that a jury of twelve could not have been selected out of the thirty-one that were called into the box. In addition to this, the verdict of the jury itself is adverse to the contention of the appellant. The jury, by its verdict, acquitted one of the defendants upon all twenty of the charges. It acquitted appellant upon ten thereof. The trial court in this case properly exercised its discretion in denying the motion for change of venue.

■ It is contended that the court erred in refusing a continuance. This also is a matter which rests in the discretion of the trial court, and this court will not disturb the ruling of that court in the absence of a showing that the discretion has been abused. *State v. Conner,* 107 Wash. 571, 182 Pac. 602; *State v. Miles,* 168 Wash. 654, 13 P. (2d) 48.

In this case, the motion for continuance was urged because it is claimed that appellant's counsel had not had time, after the books and accounts were available to him and his expert accountants, to properly prepare the appellant's case. Little need be said upon this question. The conduct of counsel in the direct examination of witnesses, as well as in the cross-examination of the state's witnesses, demonstrates that counsel was prepared to meet every emergency and properly protect his client's interest. There was no error in refusing a continuance.

■ It is contended that it was error for the trial court to overrule the demurrer and to deny the motion to require the state to elect upon which group of charges the trial would be had. This contention is based on the assumption that the charges in the first ten counts were of a different class from those in the

second ten. Subdivision 2 of Rem. Rev. Stat., § 2601, provides that every person who shall obtain property of another by false and fraudulent representations shall be guilty of larceny. Subdivision 3 provides that every person who with intent to deprive or defraud the owner thereof shall have property in his possession as trustee and shall appropriate the same to his own use shall be guilty of larceny.

The statute provides for a single offense, that of larceny, but specifies the different ways in which it may be committed. *State v. Pettit,* 74 Wash. 510, 133 Pac. 1014; *State v. Klein,* 94 Wash. 212, 162 Pac. 52. If the crimes charged are of the same class, they may be embodied in the same information. *State v. Brunn,* 145 Wash. 435, 260 Pac. 990. It follows that larceny committed by the aid of false and fraudulent representations is of the same class as larceny committed where trust funds are appropriated. The demurrer was properly overruled, and the motion to elect was rightly denied.

It is contended that there was error in a number of respects in the instructions given, and particularly the instructions covering the matter of intent. The instructions given upon this phase of the case were in accord with the holding of this court in the cases of *State v. Linden,* 171 Wash. 92, 17 P. (2d) 635, and *State v. Price,* 173 Wash. 108, 21 P. (2d) 1038, and there was no error in this regard.

It is contended that the court erred in the instruction to the effect that no inference of guilt was to be drawn from the fact that the appellant did not take the witness stand and testify in his own behalf. Under the law as it is at the present time, the court of its own motion is not required to give such an instruction, but is required to give it when requested by the accused. *State v. Pavelich,* 153 Wash. 379, 279 Pac. 1102.

It being necessary for the court to give such an instruction when requested by the accused, it is difficult to see how it would be error for the court to give it when not requested.

There are other objections to instructions given, as well as complaints because requested instructions were refused, all of which have been considered, but in none of them do we find substantial merit. In the instructions given, the case was fully and accurately covered. The instructions requested, which it would have been proper to give, were covered by those given, and this is all that was necessary.

It is contended that there was error with reference to the admission or rejection of evidence, but we find the case free from error in this regard. It is particularly objected because the court permitted the transactions and books of W. D. Comer & Company and its allied corporations to be gone into prior to the date charged in the information. This was necessary in order that there might be an intelligent understanding of the evidence in support of the particular charges. The procedure, over a term of years, of W. D. Comer & Company had been the same, and we do not see that the appellant could be prejudiced in any way by permitting the earlier transactions to be gone into.

As above indicated, the appellant owned the majority of the stock of W. D. Comer & Company, was its president and directing officer. The evidence shows that the policies, plans and operation of the corporation were dictated by the appellant, and that what was done was done by his direction, permission or subsequent approval. Under such circumstances, the acts of the corporation, in improperly diverting the use of trust funds, were the acts of the appellant individually,

and he is liable therefor. *State v. Thomas,* 123 Wash. 299, 212 Pac. 253, 33 A. L. R. 781.

The judgment will be affirmed.

BEALS, C. J., MITCHELL, MILLARD, and HOLCOMB, JJ., concur.